# CASES ARGUED AND DECIDED

——IN THE——

# SUPREME COURT OF MISSISSIPPI

——AT THE——

## MARCH TERM, 1895.

---

### ED BELL *v.* THE STATE.

72 507,
75 580,
75 588

1. HOMICIDE. *Dying declaration. When admissible.*

   To render a statement admissible as a dying declaration, there must be clear proof that, at the time, there was, on the part of the deceased, a settled belief of impending death and the absence of all hope, however slight, of recovery. It is not necessary that he should have stated such belief, nor, on the other hand, is his mere statement thereof conclusive as to its existence.

2. DYING DECLARATION. *Competency. How ascertained. Full inquiry.*

   In passing on the competency of a dying declaration, the court should make full inquiry as to the circumstances, and, if necessary, require all witnesses capable of throwing light on the subject to be produced, and it should be excluded if there be a reasonable doubt as to its competency.

3. SAME. *Declaration not admissible. Case.*

   Although the wife of deceased testifies that he said, upon first meeting her, the day after being hurt, that he knew he was about to die, and afterwards stated the circumstances of the difficulty; if it appear that the wounds of the deceased were not such as to impress him or others that they were necessarily fatal; that, when being carried to his home, though conscious, he said nothing then,

or for several days, indicating apprehension of death; that he had no physician, and no one revealed to him the gravity of the wound, and that he asked one to sell him goods on credit and risk his getting well to pay for them, his statement is inadmissible as a dying declaration.

4. HOMICIDE. *Evidence. Character of deceased for violence.*

Where the testimony of accused himself, as the only eyewitness of the homicide, shows that, a quarrel having arisen with deceased, the latter advanced on him with an ax, and accused retreated and picked up a piece of iron and struck deceased, and then took from him the ax and with it struck him the fatal blow, testimony as to the character of deceased for violence is inadmissible, since such evidence would not tend to throw light on the probable apprehension of accused, growing out of the attack, or illustrate the conduct of the deceased as an assailant. *Spivey* v. *State,* 58 Miss., 858.

FROM the circuit court of the first district of Perry county. HON. S. H. TERRAL, Judge.

Appellant has been convicted of the murder of one John Powe. The circumstances of the killing, as testified to by the accused himself, briefly stated, are as follows: Accused and deceased had quarreled over some trivial matter, and, according to the testimony of accused, deceased had threatened to kill him. On the occasion in question, accused went out into the yard, where deceased was cutting wood, and the quarrel was renewed, whereupon deceased drew back the ax, saying, "I will kill you now," and struck at deceased several times, the latter retreating backward. After retreating about twenty feet in this manner, accused picked up a large piece of iron and struck deceased with it, whereupon the latter caught hold of it and accused took the ax out of his hand and struck him with it, inflicting blows which, after six or seven days, resulted fatally. The facts touching the question of the admissibility of the dying declaration are stated in the opinion.

*W. F. Stevens* and *M. U. Mounger,* for appellant.

It seems the state cannot prove a dying declaration by anyone except the wife of deceased. No one else that came near

him heard him say that he expected to die. McSwain, a witness for the state, says the deceased asked him to sell him meat, and risk his paying for it when he got well. The evidence is wholly insufficient.

*Southworth & Stevens*, on the same side.

It was error to exclude evidence as to the character of the deceased. Wharton on Crim. Ev., 766. The, rule is that, when defendant, by his own or other testimony, shows a *prima facie* case of self-defense, the evidence of his own good character or of the violent character of the deceased, is admissible. *Coleman* v. *State*, 59 Miss., 484; *McDaniel* v. *State*, 8 Smed. & M., 401; 1 Greenl. on Ev., 765; 2 Starkie on Ev., 214; *Wesley* v. *State*, 37 Miss., 327. The alleged dying declarations were not admissible, because no sufficient predicate was laid. It does not appear that there was no hope of recovery. Even if faint hope was raised, the statement should be excluded. Wharton on Crim. Ev., § 285; *Rex* v. *Jenkins*, 11 Cox C. C., 250; 1 Bishop on Crim. Proc., §1207. The evidence and circumstances rather show that deceased expected to recover. See *Owens* v. *State*, 59 Miss., 547; *Lambeth* v. *State*, 23 *Ib.*, 322; *Nelms* v. *State*, 13 Smed. & M., 500; Wharton on Crim. Ev., §§ 236, 304.

*Frank Johnston*, attorney-general, for the state.

The court properly excluded evidence of the character of deceased. This is not an exceptional case, where there is a doubt as to which party made the attack, and the defendant claims to have acted in self-defense, and the whole evidence is circumstantial. 2 Bishop on Crim. Proc., §§ 213, 616. By his testimony, defendant is precluded from the doctrine of self-defense. *Chase* v. *State*, 46 Miss., 683.

COOPER, C. J., delivered the opinion of the court.

The circumstances of the homicide were not such as to make competent evidence of the character of the deceased for peace

or violence.    That he was of good or evil repute—irascible or quarrelsome or given to broils—would thrown no light upon the character of the homicide, in view of the evidence.    *Spivey* v. *The State*, 58 Miss., 858.

The testimony of the wife of the deceased, in which is detailed his supposed dying declaration, was improperly admitted. Repeated examinations of the record deepens our conviction that the court should have required a full and careful disclosure of the circumstances under which the declarations were made, and of the facts going to show that the declarations were made by the deceased under that solemn and settled conviction of impending death which is alone recognized by law as the equivalent of the oath of the person by whom they are made. The question of the admissibility of dying declarations is to be decided by the court, and, when offered in evidence, it is "the duty of the court to fully investigate the circumstances under which they were made, with the view of ascertaining whether they are admissible in evidence, as such, under the rules of law with respect to that sort of evidence.    *Owen* v. *State*, 59 Miss., 547.

Mr. Greenleaf states the principles under which this character of evidence is controlled, as follows: "It is essential to the admissibility of these declarations, and is a preliminary fact, to be proved by the party offering them in evidence, that they were made under a sense of impending death; but it is not necessary that they should be stated at the time to be so made. It is enough, if it satisfactorily appears in any mode, that they were made under that sanction, whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of his medical or other attendants stated to him, or from his conduct or other circumstances of the case, all of which are to be resorted to in order to ascertain the state of the declarant's mind.    The length of time which elapsed between the declaration and the death of declarant furnishes no rule for the admission or rejection of

the evidence, though, in the absence of better testimony, it may serve as one of the exponents of the deceased's belief that his dissolution was or was not impending. It is the impression of almost immediate dissolution, and not the rapid succession of death in point of fact, that renders the testimony admissible. Therefore, when it appears that the deceased, at the time of the declaration, had any expectation or hope of recovery, however slight it may have been, and though death actually ensued in an hour afterwards, the declaration is inadmissible. On the other hand, a belief that he will not recover, is not in itself sufficient, unless there be also the prospect of almost immediate dissolution." 1 Greenleaf on Ev., § 158.

We have no doubt that the wounds inflicted by the appellant on the head of the deceased with the ax caused his death. But this is not the question involved. The true inquiry is, whether the deceased, at the time he made the declaration, believed that these injuries would certainly result in his speedy death. It appears, from the testimony of Mr. McSwain, at whose house the homicide occurred, that the deceased was struck thrice on the head, "one wound back of the head, the scar of which was almost one inch wide and three inches long," which looked as though "it might have been made with the pole of the ax. There was a scar in the top of the head, as if made with the eye of the ax, and a chop in front, on the forehead, as if made with the blade of the ax." The witness, Hinlon, who saw the deceased after his death, gave substantially the same description of the wounds, except the one on the forehead, which he says "cut through the skull, and I could see something like the brain in there." No other witness thus describes the wound on the forehead, and, in view of all the evidence, we do not think the court would have been warranted in finding, as a fact, that such was the character of that wound known to the deceased. It is not suggested, in the evidence of those, who, immediately after the injury, saw the deceased, that the blows deprived him, even temporarily, of consciousness. He remained at the house

of Mr. McSwain that night, and said nothing to him indicating that he believed the wounds would result in death. McSwain says "he did not say anything about dying, that I heard. He asked me if I would sell him some meat for his family and risk his getting well to pay me for it, and I would not do it."

Perkins, another witness for the state, testified that he was with the deceased during the night, and heard him say nothing of dying except that Bell "had almost killed him." This witness also testified that he "went home with deceased the next day, and stayed with him most of the time. Never heard him say anything about dying that I now remember."

It does not appear that deceased had any medical attention; that his wounds were examined by anyone, and their gravity explained to him; that anything was said to him by anyone calculated to impress him with the conviction that his condition was serious, much less a hopeless one.

His declarations were proved by the testimony of his wife, who, over the objection of the defendant, was permitted to testify. She said: "I saw John when they brought him home the next day (Thursday) after he was hurt. He told me, when they brought him home, that he was bound to die, and he knew it, for he said: 'I can't live but a few days. I know Ed Bell has killed me. Will die in a few days.' He told me that when he first got home, and lay down on a pallet. He told me what to do, and said: 'I know I will die in a very few days, for I can't live this way. Ed Bell has killed me. I know it.'" The bill of exceptions continues: "Here the district attorney asked the witness whether John Powe made any statement to her about the difficulty before he died, and, if so, to state what they were." The defendant objected to the introduction of the statements, for the reason that no facts had been shown to make the declaration competent. The objection was overruled, and the witness testifying, said: "John Powe, after telling me he was bound to die, said that he and Bell started to get some stove wood, and he had the light, and Bell the ax, and Bell told him

to pick up some stove wood and take it in the house, and he said to Bell: 'No, let us wait and take the wood in the house in the morning.' . And Bell said: 'No, let us take it in to-night.' And John said he stooped down to get the wood and Bell struck him with the ax, and he never knew anything more for some time, when he was somewhere else. There were several persons present, I think, when John made this statement. They brought him home in an ox wagon. He began telling me about going to die while in a chair waiting for the pallet to be made, and finished about how it was after he lay down. We had to hold him up in a chair, and lay him down. Some of the parties who were present live in Green county, and some live in Alabama. John did not tell us to buy meat from Mr. McSwain on credit and tell him he would pay for it when he got well, for he said he was going to die all the time. Will Perkins was there when John was telling me, and I reckon he heard him.''

The gravity of the issues involved in that class of cases in which alone this character of hearsay evidence is admissible; the fact that the defendant is deprived of the opportunity of cross-examination; that the declaration is usually that of a hostile party, and is very generally proved by the testimony of his friends or relatives, has justly caused the courts to restrict its admissibility within well-defined limits, and to require clear proof of those conditions the existence of which are essential to its competency. The sincere and settled belief of impending dissolution, the absence of all hope, however slight, can alone give to the declaration that sanction which is attributed to the testimony of the living by the solemn oath judicially administered. The means by which this essential fact shall be established are not so important as the clearness of the proof, whatever may be the evidence by which the proof is made. It is not necessary that the declarant shall aver that he believes death to be certain and impending. *People* v. *Simpson,* 48 Mich., 474; *Ward* v. *State,* 78 Ala., 441; 1 Greenl. on Ev., 158;

*Commonwealth* v. *Matthews*, 89 Ky., 287; *Donnelly* v. *State*, 26 N. J. L., 463; *Tip* v. *State*, 14 Lea (Tenn.), 502.

On the other hand, the mere fact that the declarant stated that he would die, does not necessarily establish that he was without hope, and expected a speedy dissolution. Much depends upon the circumstances of such statement. Exclamations of despondency or from pain, though they may be in language which, under other circumstances, would be appropriate to express settled despair and hopelessness, may, and often do, indicate far less. To give to words which the observation of mankind teaches are frequently used in a different sense, an inflexible significance, even though it, be a natural one, would be to do violence to the plain dictates of common sense, and would often result in serious injustice. Words are but the exponents of thought, and the effort must be to determine whether, in the particular instance, the thought suggested by their use was that of the speaker.

The deceased, here, had received wounds from which he doubtless died, but their immediate effect seems not to have been sufficiently serious to impress upon him, or those who saw him, the fact that they were of a fatal character. Before leaving the house of Mr. McSwain he asked him to sell, on credit, food for his family, and "risk his getting well to pay for it;" he said nothing to the state's witness, Perkins, during the night, of the injury, nor the next day, while being carried home, indicating the slightest apprehension of death. When carried into his house and placed on a chair, and at that time meeting for the first time his wife, in what seems to have been an ebulliton of despondency, he used language describing his condition, which, under other circumstances, might have indicated an utter absence of all hope of recovery, and a fixed apprehension of immediate death. But the question returns, whether this language, under the circumstances, so certainly indicates that mental condition requisite to make what he then said a dying declaration, as to justify its introduction in evidence against one

being tried for his life, without, at least, further and more ex- ' tended examination of other witnesses then present.   Perkins, who was present at the time, either did not hear what was said, or the manner of the declarant did not impress him as being that of a man dying or who believed himself destined to an early death.   Not only is this true, but throughout the following days, during which he remained with him, this witness heard from the deceased no expression indicating an apprehension of death.   Others were present at the time and afterwards, but no one of them was called upon to testify either to the declarations or to facts tending to show the physical or mental condition of the deceased.   Admitting the truth of all that the wife stated, it was at least left in doubt whether the statement of the deceased that he would die from his wounds expressed and clearly proved a hopeless and fixed condition of mind, or but showed a momentary despondency springing from the pain of meeting his family.   We think it clear that the court should at least have required a full development of all the circumstances, and from other witnesses if necessary, and from such investigation should have determined the existence of that settled feeling of hopelessness on the part of the declarant before admitting his statement as a dying declaration.   *In favorem vitæ*, all doubt should be resolved against the state and in favor of the accused.

*Judgment reversed.*