DUDLEY DRANE *v*. STATE OF MISSISSIPPI.

[45 South., 149.]

CRIMINAL LAW AND PROCEDURE. *Homicide. Evidence. Conversation between accused and accomplice.*

After proof of a dying declaration by the victim of a homicide in which the accused and another person already convicted are named as his slayers, it is not error, where, save defendants, there was no eye-witness, to admit testimony to the effect that on the day of the killing such other person stated to the accused that deceased would be put out of the way that night and, on the accused inquiring if he was sure of it, further stated that he was sure of it, that everything was fixed and deceased would not appear against them in a pending prosecution in which both parties to the colloquy were interested.

2. SAME.  *District attorney.  Argument.  Failure of accused to testify.*
    The statement of the district attorney to the jury that no one had
       denied what a witness had testified as to·a conversation between
       the accused and another, cannot be treated as a comment on the
       failure of the accused to testify when the other party to the con-
       versation might have been called on to contradict the testimony.
4. SAME.  *District attorney.  Improper argument.  Absence of reversible*
    *error.*
    Where the court offered to instruct the jury to disregard as im-
       proper a remark made to them in argument by the district attor-
       ney, or, at the election of the accused, to enter a mistrial, and
       the accused elected to proceed, the court directing the jury to·
       wholly disregard it, a conviction will not be reversed because of
       the remark.

FROM the circuit court of Webster county.

HON. J. T. DUNN, Judge.

Drane, appellant, was jointly indicted with Bud Burns for
the murder of Jeff Harden; all parties were negroes.   A sever-
ance being granted, appellant was tried separately, convicted,
sentenced to the penitentiary for life, and appealed to the su-
preme court.   .

.  The deceased, Harden, was decoyed from his home at night
by some one calling to him that he was needed at the home of a
neighbor; and while on his way thither he was shot in the back
and subsequently beaten with a club.   His lantern was burning
when he left home, and was presumably burning when he was
attacked.   He was found lying in the road the next morning,
and brought to his home where, after lingering for some hours,
he died from his injuries.   Appellant and Burns were charged
jointly with the crime, and, at the time of appellant's trial,
Burns had been tried and convicted and had taken steps to ap-
peal his case to the supreme court.   There were other than the
indicted parties no eye-witnesses of the tragedy, and the state
relied to show appellant's guilt upon the testimony of one La-
tham, detailing a conversation between Burns and appellant,
overheard by witness, and the testimony of a negro preacher,
Wall, giving the dying declaration of the deceased.   Latham

testified that on the day before the homicide he overheard a conversation between appellant and Burns, against whom—as shown by other evidence—deceased had been subpoenaed to appear as a witness in a criminal prosecution for unlawfully selling intoxicants. Latham's testimony touching the conversation was undisputed and it is stated substantially in the opinion of the court. Latham further testified that on the morning after the homicide, when he and a number of men, of which appellant was one, were told that Harden had been killed, appellant, without having in any way been asked about the matter, remarked "I don't know anything about it. I was at home in bed." The testimony of the negro preacher, Wall, also undisputed, was admitted in evidence over appellant's objection, and was, in effect, that he was called in to see Harden on the morning after the shooting and found him weak and in bed; that the wounded man was able to invite the witness into his room and stated that he was trusting in the Lord, knew he would never get well, and, after being raised in his bed, said that *"Alex Johnson got me into this trouble. Alex turned the boys up and had me summoned as a witness, and I told the truth about the matter; Alex is sick, and from what I learn, will not live long, and they thought they would put me out of the way, and three men were engaged in it."*

Being asked by the witness who these three men were, the dying man said, with difficulty, *"Bud Burns and Dud Drane, and ——"* but was unable to state the name of the third party, dying in a few minutes afterward. The appellant did not testify as a witness on the trial. On motion for a new trial appellant assigned as error the action of the court in admitting the testimony of Latham and of Wall, and also the remarks of the district attorney in his argument before the jury to the effect that nobody had denied what Latham had said on the witness stand; the action of the trial court in touching the remarks, are stated in the opinion of the court.

*T. W. Scott,* for appellant.

It was error for the court below to admit the testimony of Latham showing the alleged conversation between appellant and Burns. The only purpose for which it could be used would be to establish a conspiracy between appellant and Burns to kill deceased. Hence, if incompetent, as it was, the wrong done appellant by its admission is apparent.

The alleged conversation was too vague to be the basis of a conspiracy.

The court erred also in overruling appellant's objection to the statements made by the district attorney in his argument before the jury wherein he informed them that "nobody on earth has denied what Lawrence Latham said about this." The appellant was entitled to be tried with all his privileges preserved at all times during the trial. It was error, directly or indirectly, to refer to the fact that no one had denied what Latham stated, because this was clearly an inference that the appellant had failed to go upon the stand in his own behalf in denial of the statement. If the district attorney should be allowed indirectly to comment upon appellant's failure to testify for himself, then it follows that Code 1906, § 1918, providing that in criminal matters "the failure of the accused in any case to testify shall not operate to his prejudice or be commented on by counsel," is without force.

*George Butler,* assistant attorney-general, for appellee.

Certainly the testimony of the state's witness, Latham, showing the conversation between appellant and his confederate, Burns, taking place just prior to the assassination, was competent. For these two persons are the very ones whom the dying declaration of the murdered man directly implicated as his assassins.

Learned counsel for appellant insists that the action of the district attorney, in informing the jury that nobody had denied

what Latham said about the conversation, constituted an invasion of appellant's statutory rights existing under Code 1906, § 1918. But, inasmuch as the appellant, instead of himself taking the witness' stand, could easily have secured the testimony of Burns to deny the statement—provided Burns would actually deny it—it does not follow that the district attorney committed any error.

But all conjecture as to this is set aside by the fact that the circuit court at once offered to instruct the jury to "disregard the remarks of the district attorney, as they were improper and not to be considered by the jury at all," or, at the option of appellant, to enter a mistrial. Appellant's election to proceed with the trial estopped him from complaining of the action of the district attorney.

Calhoon, J., delivered the opinion of the court.

The testimony of Lawrence Latham relating the conversation between Dudley Drane and Bud Burns was properly admitted. In view of the tragic development, so soon after the conversation, and of the dying declaration of Jeff Harden, it was clearly competent to show that Burns told Drane: "We have got everything fixed. We will put Jeff Hardin out of the way to-night" —and Drane answered, "Are you sure of that?" and that Burns replied: "I am sure that everything is fixed. He will not appear against us in court." Reflecting that the two parties to this colloquy are the very ones named as the assassins by the dying declaration, and that they were the two interested in his taking-off, its competency is manifest.

It would not have been error not to overrule the objection to the statement of the district attorney in argument that "nobody on earth has denied what Lawrence Latham said about this," because Burns might have been produced as a witness to deny it; and so it is too great a strain to hold these remarks as a comment on the fact that the accused did not testify. The court, however, out of abundant liberality, offered to instruct the jury

to disregard the remarks of the district attorney, that they were improper and not to be considered by the jury at all, or, at the election of the defendant, offered to enter a mistrial in the case. Defendant elected to proceed, and the court told the jury to disregard the remarks entirely. Surely a reversal on this ground would be absurd.

The dying declaration was properly admitted. 2 Wigmore, Ev. §§ 1447, 1448.

*Affirmed.*