## WINCHESTER *v.* STATE.

(In Banc.   June 6, 1932.)

[142 So. 454.   No. 30072.]

464

J. A. Riddel, J. L. Broadway, and C. D. Shields, all of Meridian, for appellant.

W. D. Conn, Assistant Attorney-General, for the state.

**Anderson, J.**, delivered the opinion of the court.

Appellant, a negro, was indicted and convicted in the circuit court of Lauderdale county of the murder of Minnie Brown, a negress, and sentenced to be hanged. From that judgment he prosecutes this appeal.

Appellant's only defense was insanity; that his mental condition was such that, at the time of the homicide, he was unable to distinguish between right and wrong. The evidence in his behalf tended to establish his defense.

The case was set for call on the 16th day of February, 1932. On that day appellant filed a motion, in writing, requesting a special venire, and, in the motion, demanded service of a copy of the indictment and a list of the special venire summoned at least one entire day before the trial. This motion was filed under the provisions of section 1262 of the Code of 1930. On that day the case was set for trial at nine a. m., Friday, February 19, 1932. A copy of the indictment and the list of the special venire summoned for the trial was delivered to appellant on the afternoon of February 18, 1932, at four-fifty o'clock. When the court convened at nine o'clock the next day, appellant objected to then being put to trial for the reason that service of the copy of the indictment and the list of the venire summoned had not been had upon himself or his attorneys for at least one entire day, as demanded in his motion, and as required by the statute. Upon this objection testimony was heard. The objection was overruled and appellant put to trial. The objection and hearing thereon took place before the impaneling of the jury.

A deputy circuit clerk testified that she made a correct list of the names of those drawn from the jury box as the special venire and gave appellant's attorneys a copy of this list, and that a copy of the indictment was lying on the table at the time, but that she did not remember whether their attention was called to the copy of the indictment or not. This occurred on the day the case was set for call, the 16th of February.

After the jury had been selected, and before the introduction of any evidence, the appellant renewed his objection, which was overruled by the court. That action of the court is assigned and argued as error. Appellant's contention is sustained by the case of O'Quinn v. State, 131 Miss. 511, 95 So. 513. The court held in that case that the language in the statute, "one entire day before the trial," meant commencing at twelve o'clock at

night and ending at twelve o'clock the next night, and that parts of days could not be pieced together to make out a whole day.

If appellant or his attorneys had been given a copy of the list drawn from the jury box, and a copy of the indictment, on the call day of the case, that would not have met the requirement of the statute. To use the language of the statute, they were entitled to "have a copy of the indictment and list of the special venire *summoned*." (Italics ours.) They did not get this until four-fifty o'clock on the afternoon of the day before the trial, which was too late for the trial to begin on the next day.

The state introduced as a witness the sheriff of Lauderdale county. He testified that he, one of his deputies, and the district attorney, were in the county jail where the appellant was incarcerated, and that appellant admitted to the sheriff he was with a party of his friends about six o'clock p. m. of the day of the homicide; that they had been drinking narcohol; that he left his friends and went to his mother's home and got his gun. The sheriff further testified that this statement was made in response to questions put to the appellant by the district attorney; and that so far as he knew appellant had not sent for these officers, nor advised them that he wanted to make a statement in regard to the killing. The state made no attempt to show that these officers were present in the jail in response to a request by the appellant.

Appellant's attorneys objected to this testimony upon the ground that the predicate had not been laid for its admission by showing that appellant's statement was free and voluntary, and moved the court that this question be inquired into in the absence of the jury. Appellant's objection and motion were denied. This action of the court is assigned and argued as error. It is not clear from the record in this case whether appellant's statement to the officers was in the nature of a confession

or not. On another trial it should be, and probably will be, developed whether or not it was. If the court be of the opinion that the appellant's statement to the officers has a direct bearing on his guilt, it should not be admitted over his objection, unless the predicate is first laid, in the absence of the jury (if requested by the appellant) by showing that it was free and voluntary. Fletcher v. State, 159 Miss. 41, 131 So. 251; Hathorn v. State, 138 Miss. 11, 102 So. 771.

The giving of the following instruction for the state is assigned and argued as error by the appellant: "The court charges the jury for the state that they may imply malice or infer malice from the use of a deadly weapon." The court erred in giving this instruction for two reasons: First, malice is not implied from the mere use of a deadly weapon—it cannot exist without deliberation; and second, all the facts and circumstances attending the homicide were developed by the evidence. In such a case an instruction of this character has no place. The presumption of malice arising from the use of a deadly weapon in such a case disappears—it must yield to the evidence. Smith v. State, 161 Miss. 430, 137 So. 96; Walker v. State, 146 Miss. 510, 112 So. 673; Cumberland v. State, 110 Miss. 521, 70 So. 695.

The last clause in one instruction given for the state is in this language: "Further it is not every form of insanity that the law recognizes as a defense to crime, and even if one be insane but still be able to appreciate the difference between moral right and wrong as to a particular act, the law holds him responsible for that act regardless of how insane he may be." Appellant argues that that clause made the instruction erroneous. It should be borne in mind that appellant's only defense was insanity. In Nelson v. State, 129 Miss. 288, 92 So. 66, 70, the following instruction for the state was condemned by the court: "The court instructs the jury for the state that you cannot acquit the defendant on his

plea of insanity, if you believe from the evidence beyond a reasonable doubt that he killed the deceased without authority of law and with the deliberate intention of taking his life and at the time he knew that it was morally wrong so to do, and this is true, even though you may further believe that the defendant was insane and could not control himself and was feeble-minded and was not like an ordinary man.'' The court held that the first division of the instruction embodied a correct statement of the law, but that the last clause rendered the instruction as a whole erroneous. The court used this language: ''The language of the second division is so involved and complicated that it is hard to say whether appellant's criticism of it is well founded or not. In order to determine that question, it would be necessary to carefully parse out the language of the entire charge. The ordinary juror should not be required to do this. Perhaps the trained legal mind could demonstrate that, according to the proper meaning of this instruction, it is not subject to the fault claimed. However, it is plain that, on a casual reading of the instruction, the two divisions referred to appear to be conflicting and confusing. It should not have been given in that form.'' On another trial of this case this instruction should not be given in the same form.

The court refused appellant two manslaughter instructions. Their language was different, but in substance they were the same. By these instructions appellant sought to have the court inform the jury that, if appellant was incapable, from insanity or diseased mind, of entertaining malice toward the deceased, they could not find him guilty of murder but could find him guilty of manslaughter. There was no error in refusing these instructions. Under the undisputed evidence in this case appellant was either guilty of murder or nothing. If he had sufficient mind at the time to know the difference between right and wrong, under the undisputed evidence,

he was guilty of murder and nothing less. On the other hand, if he had not sufficient mind to distinguish between right and wrong at the time of the killing, he was not guilty of manslaughter or any other crime, and was entitled to an acquittal.

During the argument of the case, appellant presented, in writing, to the court three special bills of exception, which the judge signed, and they were made a part of the record. The first special bill recites that the county attorney, in his argument to the jury, used this language: "What defense has been shown here? There is no denial that he killed her. Did you ever hear of a more bloody thing?" The second bill of exceptions recites that the district attorney, during his closing argument to the jury, used this language: "Not a single soul has said she was not shot as this Darden woman has told you." The appellant objected to this language by the county attorney and the district attorney, which objection was overruled by the court, to which action of the court the appellant excepted.

The third special bill of exception recites that the district attorney, during his closing argument in referring to the instructions granted by the court for appellant, used the following language: "Gentlemen of the jury, take this rigmarole of instructions when you go out." At this point appellant's counsel objected to the use of the language on the ground that it belittled and disparaged the instructions and appellant's defense of insanity, in response to which objection the court stated: "You are right, but we all have a right to our own interpretation." Then the bill of exceptions goes on: "to all of which the defendant objected, and excepted, and tenders this his special bill of exception to such conduct of the district attorney and the trial judge." Thereupon appellant asked that a mistrial be entered, which the court refused to do.

In view of the fact that appellant and the state's witness, Leona Darden, were the only eyewitnesses to the killing, the language of the county attorney and the district attorney embodied in the first two bills of the exception, we think, could have meant nothing less than a comment on appellant's failure to testify, which is prohibited by section 1530, Code 1930. See the following cases construing the statute: Guest v. State, 158 Miss. 588, 130 So. 908; Harwell v. State, 129 Miss. 858, 93 So. 366; Gurley v. State, 101 Miss. 190, 57 So. 565; Harris v. State, 96 Miss. 379, 50 So. 626; Prince v. State, 93 Miss. 263, 46 So. 537; Drane v. State, 92 Miss. 180, 45 So. 149; Smith v. State, 87 Miss. 627, 40 So. 229, 230; Hoff v. State, 83 Miss. 488, 35 So. 950; Sanders v. State, 73 Miss. 444, 18 So. 541; Reddick v. State, 72 Miss. 1008, 16 So. 490; Yarbrough v. State, 70 Miss. 593, 12 So. 551.

In the last case cited the court said that the statute forbids, in unmistakable language, "any comment, friendly or unfriendly. It forbids any remark, of any character, in any words, upon the failure of the accused to testify."

In Reddick v. State, supra, the language used by the district attorney in his argument was this: "And he has not denied it." The court held that the statute was violated.

In Hoff v. State, supra, the statute was violated by this language used by the district attorney in his argument: "Nobody on earth denies that he wrote it. . . . No living soul has denied that defendant seduced this little girl."

In Smith v. State, supra, the court held this language, used by counsel arguing the case for the state, violated the statute: "No one had denied that he . . . killed Buchanan."

Appellant contends that the language used by the district attorney in arguing the question, and that used by the court in passing upon appellant's objection to the

district attorney's language, as embodied in the third bill of exceptions, amounted to a disparagement of the instructions given for him. We think the appellant's contention is well founded.

By the first error committed by the court a fundamental right of appellant was invaded. That ground alone is sufficient to reverse the judgment. We do not decide whether or not, except for that error, the judgment would be reversed because of any one or all of the other errors. They were errors, however, which should be avoided on another trial.

Reversed and remanded.