BAYLIS *v.* STATE.

(Division B. Oct. 10, 1938.)

[183 So. 527. No. 33230.]

John Arrington, of Monticello, **Ovie L. Berry**, of Mendenhall, and **Martin & Farr**, of Prentiss, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

Argued orally by **Geo. L. Martin,** for appellant.

**Anderson, J.,** delivered the opinion of the court.

Appellant was indicted and convicted in the Circuit Court of Lawrence County of the crime of the murder of one J. W. James, and upon the jury's being unable to agree as to the punishment he was sentenced to the penitentiary for life. From that judgment appellant prosecutes this appeal.

Appellant is a negro and so was the deceased. The wound from which the deceased died was inflicted on a Saturday night. He lived until the next Monday morning about eleven o'clock, when he died as a result of the wound which was inflicted with a knife. The negroes had what is commonly known as a fish fry at China Lee School in Lawrence County. They were in three or four groups. The evidence showed without any substantial conflict that there was no justification for the stabbing. The question was as to the identity of the guilty person.

Four witnesses, Hartwell, Jackson, Hartzog, and Ratliff, testified that appellant came to the group where the deceased was and inflicted the death wound without any provocation whatever.

On the other hand, the witnesses, Swan Ward, and Van Ward, and Sanders, testified that appellant was not present in the group at the time the wound was inflicted, that he was some distance away, and several witnesses testified that the main witness for the state, Hartwell, was not present nor situated so he could have seen the occurrence. The state offered the wife of the deceased to prove a dying declaration made by him. On a preliminary inquiry by the court in the absence of the jury, she was permitted to testify, over appellant's objection, that her husband stated more than once between the time he was wounded and his death that appellant inflicted the wound that caused his death, and did so without cause.

Her qualifying evidence was substantially as follows:

that her husband said several times he was going to die, that one or more times he said he thought he was going to die, and at another time he said he believed he was going to die. "He did not talk about it all the time, he was so sick, he couldn't. The doctor gave him a hypodermic and he slept most of the time."

We are of the opinion that such declarations failed to come up to the requirements of the law. Lipscomb v. State, 75 Miss. 559, 23 So. 210, 230; Dean v. State, 173 Miss. 254, 160 So. 584, 162 So. 155; Bell v. State, 72 Miss. 507, 17 So. 232; Lea v. State, 138 Miss. 761, 103 So. 368; Hathorn v. State, 138 Miss. 11, 102 So. 771; Smith v. State, 161 Miss. 430, 137 So. 96; People v. Falletto, 202 N. Y. 494, 96 N. E. 355.

In the latter case the Court of Appeals of New York put in very clear and forceable language the same principles declared by our court in the cases above referred to. That court said: "Dying declarations are dangerous, because made with no fear of prosecution for perjury and without the test of cross-examination, which is the best method known to bring out the full and exact truth. The fear of punishment after death is not now regarded as so strong a safeguard against falsehood as it was when the rule admitting such declarations was first laid down. Such evidence is the mere statement of what was said by a person, not under oath, usually made when the body is in pain, the mind agitated, and the memory shaken by the certainty of impending death. A clear, full, and exact statement of the facts cannot be expected under such circumstances, especially if the declaration is made in response to suggestive questions, or those calling for the answer of 'Yes' or 'No.' Experience shows that dying declarations are not always true. As we said in People v. Corey, 157 N. Y. 332, 349, 51 N. E. 1024, 1029: 'It has happened that a dying declaration, accusing the defendant, made one day, was contradicted by another dying declaration of the same person made on a subsequent day, stating that the defendant "did not

do it.'' Moore v. State, 12 Ala. 764, 46 Am. Dec. 276. So dying declarations have been shown to be positively untrue. White v. State, 30 Tex. App. 652, 18 S. W. 462.' Men sometimes lie, even when facing death, as has frequently been known of convicts about to be executed; and the motive of self-exoneration which induced them to lay the crime on some one else might move a declarant to say that the accused was the aggressor by committing the first assault. Experience shows that dying persons have made self-serving declarations, such as false accusations, in order to destroy their enemies, and false excuses, in order to save their friends.''

The court, therefore, erred in admitting her testimony. The testimony of Mrs. Marvin Davis in reference to the dying declaration made by the deceased in her presence was admitted over applicant's objection. Mrs. Davis' husband was a section foreman of the Illinois Central Railroad Company, and the deceased was a section hand in his employ and had been for sixteen years. He resided in one of the section houses near the home of the said foreman. Mrs. Davis was with him several times between the time he was wounded and his death. The ground of the objection was that before the admission of the testimony the judge should have held a preliminary inquiry, in the absence of the jury, as to its competency. This had not been done. The objection was on that ground. Appellant, under the law, was entitled to a preliminary hearing, and, in addition, to have the testimony ruled out unless the judge was convinced of its competency beyond every reasonable doubt. Scott v. State, 166 Miss. 6, 148 So. 239; Owens v. State, 59 Miss. 547; Lipscomb v. State, supra.

The attorney-general argues, however, that the testimony was shown to be competent beyond reasonable doubt, and, therefore, appellant was not harmed for lack of the preliminary hearing; that such a hearing would have reached the same result—the testimony would have gone in. To sustain that contention Pickett v. State, 155

Miss. 386, 124 So. 364 is relied on. That was a prosecution for a felony. Material evidence was obtained by search without a search warrant. One of the questions was whether there was probable cause for the search. That question had not been decided by the judge in the absence of the jury. The court refused to reverse upon that ground stating, "When objection to the evidence is made on the ground of the absence of a search warrant, or in case of felony on the sufficiency of the evidence to show probable cause, the court should hear the evidence out of hearing of the jury and permit all the evidence to be then offered; still it is not reversible error to refuse to do so, if the evidence is in fact competent, as no prejudice results to the defendants."

Whether that case is controlling on the question here, we decline to decide. However, we think it well to notice this difference. On the preliminary hearing, whether there is probable ground for the search without a search warrant for the preponderance of the evidence controls. While on a hearing of cases like the one in hand, the competency must be shown beyond a reasonable doubt.

We reverse on the first ground and leave this question open because its decision is not necessary in this case.

Reversed and remanded.