HEARD v. STATE.

(Division A.   Jan. 11, 1937.)

[171 So. 775. No. 32234.]

662

M. Ney Williams, of Raymond, for appellant.

664

**Webb M. Mize**, Assistant Attorney-General, for the state.

**Smith C. J.**, delivered the opinion of the court.

The appellant was convicted on an indictment alleging that he "being then and there prior thereto a duly

elected, qualified and acting member of the Board of Supervisors of Hinds County, Mississippi in and for beat three of said county did then and there wilfully, unlawfully, wantonly, fraudulently and feloniously with the intent to cheat and defraud Hinds County, Mississippi while acting and serving as a member of said Board of Supervisors at the August 1935 meeting of said Board of Supervisors attempt, design and endeavor to cheat and defraud the said Hinds County, Mississippi by then and there representing, pretending and claiming to the said Board of Supervisors that the said Hinds County was indebted to G. M. Harris in the sum of $24.00.'' After setting forth in a similar manner the names of nineteen other persons, with the amouts due them, including ''Mrs. Frank Womack in the sum of $20.00,'' the indictment proceeded as follows: ''and did then and there unlawfully, wilfully, wantonly, fraudulently and feloniously while acting and serving in his official capacity as a member of said Board of Supervisors attempt, design, and endeavor to secure the allowance and payment of said claims by said Board of Supervisors out of the funds of Hinds County, Mississippi when in truth and in fact the aforesaid sums and claims were not due and owing to the aforesaid parties by the said Hinds County, and the said S. C. Heard did then and there well know that the said claims and amounts were not due and owing by the said Hinds County to said parties as represented and claimed by him.''

The assignments of error are: The court below erred (1) in overruling a demurrer to the indictment, the ground of which is that the indictment charges more than one distinct and separate offense in one count; (2) in overruling a motion by the appellant that the state be required to elect upon which of the offenses alleged to be charged it would proceed; (3) in overruling the appellant's objection to evidence introduced by the state; (4) in granting and refusing instructions to the jury;

and (5) in overruling an objection by the appellant to a portion of the district attorney's argument to the jury.

1. The indictment rests on section 896, Code of 1930, which provides that if a state or county official "shall, by any wilful act or omission of duty whatever, defraud, or attempt to defraud, the state, or any county, city, town, or village, of any moneys, security, or property, he shall, on conviction thereof, be guilty of embezzlement, and fined," or imprisoned in the penitentiary, or in the county jail. The indictment charges the appellant, not with an omission of duty, but with the doing of an act specifically stated to be "representing, pretending and claiming to the said Board of Supervisors that the said Hinds County was indebted to" several named persons when he knew that the county was not so indebted. The charge is not of making separate and distinct representations as to money due separate and distinct persons, but with one representation only that the county owed several separate and distinct persons, with intent to defraud the county by inducing it to pay money which the appellant knew it did not owe. That the money was to be paid by the county, not to one, but to several parties does not separate the one act—i. e., the representation—into several crimes, but it was and remains one crime only. This is in accord with the principle underlying Ward v. State, 90 Miss. 249, 43 So. 466; Dalton v. State, 91 Miss. 162, 44 So. 802, 124 Am. St. Rep. 637; and State v. Quintini (Miss.), 51 So. 276. See, also, 31 C. J. 769 et seq. While that fact may not be invoked in aid of the indictment, the evidence discloses that the representation was by means of a single written instrument. No error was committed in overruling the demurrer to the indictment.

2. It follows from the foregoing that the court below committed no error in overruling the appellant's motion to require the state to elect to proceed only on the representation as to one of the persons named in the pay roll.

3. The evidence for the state discloses that the appellant is a member of the board of supervisors of Hinds county, in Mississippi, for district No. 3, and that the county was engaged in constructing and maintaining gravel roads, each member of the board supervising the roads in his district and the purchasing of the gravel necessary for the roads thereof. At the end of each calendar month each member of the board would file with it what is termed a "pay roll," setting forth the amount of gravel purchased in that month, the name of the seller, the amount of gravel purchased from him, and the money due him therefor, with the approval of the member of the board filing the pay roll indorsed thereon, on which, if approved by the board, warrants therefor would be issued. On the first Monday in August, being the 5th day thereof, 1935, the appellant filed with the board of supervisors the following instrument in writing:

"S. C. Heard          Gravel Pay Roll,                    July
"Hinds County

               "In Account
"G. M. Harris          120 Loads of Gravel          20        $24.00"

Then follows a similar statement of the names of nineteen other persons, with the gravel purchased from them, and the money due therefor, including "Mrs. Frank Womack, 100 Loads of Gravel, 20, $20.00," and at the end of the statement there appear, under the column setting forth the amount of gravel purchased from each, the figures "1899" loads, and under the column setting forth the amounts due each, the figures "$379.80," concluding with, "O. K.  S. C. Heard."

The board of supervisors met on the 5th day of August, 1935, but it did not take up the consideration of the pay roll until August 8th, when an objection was made by members of the board thereto, on the ground that it seemed to be excessive. According to the evidence for the state, the appellant then stated orally that part of the gravel was hauled on the 1st, 2d, and 3d of August,

and that which was credited to Mrs. Frank Womack on the pay roll was not hauled until the 5th day of August; that it was being hauled when the pay roll was approved and filed on the morning of August 5th. Afterwards, probably the next day, the appellant filed an amended pay roll on which four of the names on the first pay roll were omitted, including that of Mrs. Frank Womack, and the amounts due most of the others were reduced, showing a total of one thousand two hundred sixteen loads of gravel, for which the total amount due was two hundred forty-three dollars and twenty cents. This second pay roll was introduced over the objection of the appellant and no error was committed in so doing, for it was an admission by the appellant that the first pay roll was not correct, though not that he knew that it was not correct when he filed it.

4. The appellant requested, but was refused, an instruction directing the jury to find him not guilty. The evidence for the state further discloses that each member of the board was furnished with a road foreman, trucks, and drivers thereof for hauling the gravel from the pits from which it was taken and placing it on the roads. The members of the board, including the appellant, could not themselves check the amount of gravel hauled and used, but made their reports to the board on information furnished them by their foremen. Neither the appellant nor his foreman testified, and no witnesses who did testify checked the loads of gravel hauled. The appellant's truck drivers were introduced by the state; they did not check the number of loads of gravel hauled, but testified from their recollection as to the number of loads each participated in hauling, the aggregate number of which was six hundred or more loads less than set forth on the pay roll filed. These gravel pits were from a quarter of a mile to seven miles from the places where the gravel hauled from them was used on the roads. The appellant had five trucks, but usually only four of them

were in use. All the drivers testified that it would have been impossible to have hauled and put one thousand eight hundred ninety-nine loads of gravel on the roads in the appellant's district during the month of July. One of them testified that no gravel was hauled from the Womack pit in August prior to the ninth day thereof, and less than the number of loads set forth in the pay roll filed by the appellant with the board on August 5th. The appellant's gravel pay rolls for January to June, 1935, inclusive, were introduced in evidence, which disclose that in January he approved payments for gravel aggregating one thousand four hundred seventy-eight loads; February, one thousand and fifteen loads; March, one thousand one hundred fifty-six loads; April, one thousand three hundred seventy-one loads; May, one thousand four hundred twenty-two loads; and June, one thousand four hundred twenty-two loads. As hereinbefore stated, neither the appellant nor his foreman testified, but the owners of the gravel testified for the appellant that they did not know what gravel was hauled by the appellant from their pits; that they accepted the appellant's report thereof, and had no agreement with him, express or implied, that he was in any way to share in the purchase price thereof.

The evidence warranted the jury in believing that the county did not owe for a considerable part of the gravel appearing on the pay roll filed on August 5th, but in order for the act of the appellant in approving that pay roll to have been willful under the statute it must have been done knowingly, i. e., with knowledge that the county did not owe therefor, or for a part thereof, with the intent to defraud the county. Ousley v. State, 154 Miss. 451, 122 So. 731. Cf. D'Antoni v. Albritton, 156 Miss. 758, 126 So. 836. The indictment itself alleges that the appellant "did then and there well know that the said claims and amounts were not due and owing by the said Hinds County to said parties as represented and claimed

by him.'' With some hesitation, and after a reargument of the question by counsel, we have arrived at the conclusion that the court below committed no error in holding that this knowledge vel non of the appellant was, on the evidence, a question for the determination of the jury.

There is no specific evidence that the appellant intended to defraud the county by approving and filing the pay roll, but the only purpose he could have had in approving and filing it was to obtain the payment by the county of the money credited to the several persons thereon, and had the money been so paid the payment would have been induced by his representation that the county owed the money. If the appellant knew that the representation was false when he made it, he would then have knowingly induced the county to pay money which it did not owe, the necessary consequence of which would have been that it would have thereby been defrauded. That such was the appellant's intent will be presumed in the absence of evidence to the contrary, and there is none such here, for the rule is that a man will be presumed, in the absence of evidence to the contrary, ''to intend the necessary or the natural and probable consequences of his voluntary acts.'' 16 C. J. 81; Barcus v. State, 49 Miss. 17, 19 Am. Rep. 1; 1 Bishop's Criminal Law (8 Ed.), sec. 735. No error was committed in refusing the appellant's request for a directed verdict of not guilty.

One of the instructions granted the state is as follows: ''The Court instructs the jury for the State that if you believe from the evidence beyond a reasonable doubt that the defendant falsely presented the claim or claims that he had purchased and (hauled?) certain amounts of gravel from the persons mentioned in the indictment, and that said parties were due a certain amount of money for said gravel when he, the said Heard, knew that he had not purchased all of the said gravel represented by

him as having been purchased and hauled, then you may presume that said claim or claims were filed by the defendant with the intent and in the attempt to defraud said County.'' The appellant's objection to this instruction is the use therein of the words ''then you may presume that said claim or claims were filed by the defendant with the intent and in the attempt to defraud said County.'' It follows from what we have hereinbefore said, as to the appellant's intent in approving and filing the pay roll, that the court below committed no error in so instructing the jury.

5. This brings us to the argument of the district attorney, of which the appellant complains. A special bill of exceptions sets forth that ''the District Attorney in his closing argument stated the following: 'These truck drivers said that it was impossible to haul 1899 loads. Did anybody come before this jury and say that they did haul 1899 loads of gravel in July 1935. I say did anybody come and say it.' Which argument was objected to by defendant, which objection was by the court overruled.'' This the appellants says was a comment on his failure to testify, in violation of section 1530, Code of 1930.

In Drane v. State, 92 Miss. 180, 45 So. 149, the attorney's comment was: ''Nobody on earth has denied what Lawrence Latham said about this.'' In Johnson v. State, 109 Miss. 622, 68 So. 917, the comment was: ''The testimony for the state was uncontradicted.'' In Baird v. State, 146 Miss. 547, 112 So. 705, 706, the comment was: ''I call your attention to the fact that the testimony for the state shows that in this case a cold-blooded murder has been done, and it is undisputed.'' Though the words here were different from those used in these cases, they are the exact equivalent thereof in meaning, for all they mean is that the evidence of the truck drivers had not been denied, or was undisputed. Moreover, it appears from the evidence that the custom

of the appellant was not to himself check the number of loads of gravel hauled, but to rely on checks thereof made by his foreman, who, according to the evidence, was the only witness other than the truck drivers who probably had knowledge of the number of loads of gravel hauled. In Drane v. State, supra, the court pointed out that a denial of what Lawrence Latham said could have been proven by a witness other than the appellant, saying: "Burns might have been produced as a witness to deny it."

In the case at bar it would have been difficult for the state's counsel to properly comment on the evidence without calling the jury's attention to the fact that the truck drivers said that it was "impossible to haul 1899 loads," and that there was no evidence—that no witness had testified—that one thousand eight hundred ninety-nine loads were in fact hauled. He would have done just that had he simply called specific attention to each fact in the evidence bearing on the number of loads hauled, for in so doing he would have been compelled to disclose that no witness had testified that one thousand eight hundred ninety-nine loads had been in fact hauled. Cf. Johnson v. State, supra.

The cases relied on by the appellant are Yarbrough v. State, 70 Miss. 593, 12 So. 551; Smith v. State, 87 Miss. 627, 40 So. 229, and Gurley v. State, 101 Miss. 190, 57 So. 565, 566. In Yarbrough's case the comment was: "Defendant has not taken the stand, which is his privilege under the law." This was a direct and unmistakable comment on the failure of the defendant to testify. In Smith's case, wherein the appellant was convicted of manslaughter, four persons only were present at the homicide—"the defendant, the deceased, and the two state witnesses." The two eye-witnesses, other than the defendant, testified. The comment was: "No one had denied that he (the defendant) killed Buchanan." The court said that, "as the record showed that all of the

eyewitnesses, except the defendant, had testified, this comment upon a failure to deny the facts of the homicide as testified to by the witnesses,'' was a comment on his failure to testify. This was necessarily so, for he was the only one who could have denied the truth of what the state's witnesses had said. In the Gurley case, the defendant and Dr. Davis were both wounded in a difficulty which resulted in the death of Dr. Davis, for which the defendant was convicted of manslaughter, and counsel for the defendant stated to the jury that, ''if Dr. Davis had gotten well and defendant had died, Dr. Davis would have been on trial, perhaps, instead of the defendant.'' In replying, counsel for the state said: ''If that was true, he would have put Blankenship and other witnesses up, and Dr. Davis would have mounted the stand and told how that occurred.'' This was necessarily held to be a comment on the failure of the defendant to testify, for the pronoun ''he'' referred to the defendant, and the statement that if Dr. Davis were on trial he would have testified, could only have been intended to call the jury's attention to the fact that the defendant had not done what Dr. Davis would have done, i. e., ''told how that [the homicide] occurred.''

It may be well to also distinguish the following cases from the one at bar: In Reddick v. State, 72 Miss. 1008, 16 So. 490, the state proved an admission by the appellant to one Swayze, and the comment thereon was ''and he has not denied it.'' The pronoun ''he'' could have only referred to the defendant and was necessarily held to be a comment on his failure to testify. In Sanders v. State, 73 Miss. 444, 18 So. 541, the comment was: ''There was enough in this evidence to make it incumbent on the defendant to deny it, and he has not done so.'' This was also necessarily a comment on the failure of the defendant to testify. In Hoff v. State, 83 Miss. 488, 35 So. 950, wherein the appellant was convicted of seduction, a letter said to have been written by him was

introduced in evidence by the state; the comments were: "Nobody on earth denies that he wrote it. . . . No living soul has denied that defendant seduced this little girl." The comment as to the failure to deny the authorship of the letter could have referred only to the defendant, and the other comment was such also, for whether the appellant was guilty of seduction or not was peculiarly within his own knowledge. In Prince v. State, 93 Miss. 263, 46 So. 537, Jones had testified to a confession made to him by the defendant, and the comment was: "Gentlemen of the jury, he confessed the killing of McAllister to Will Jones, and that confession stands uncontradicted before you to-day." This was necessarily held to be a comment on the failure of the defendant to testify, for as the court there pointed out, "no one could have contradicted the fact that the confession was made except the defendant, inasmuch as the record shows that no one was present when the defendant confessed to Will Jones." In Harris v. State, 96 Miss. 379, 50 So. 626, the comment was: "That defendant murdered a man in that house, where the shooting occurred, he don't deny." The pronoun "he," of course, could have referred only to the defendant. In Winchester v. State, 163 Miss. 462, 142 So. 454, 456, the comments were: "There is no denial that he [the defendant] killed her" (the deceased), and that "not a single soul has said she was not shot as this Darden woman has told you." This argument was held to be a comment on the failure of the defendant to testify, but the court was careful to point out that the defendant "and the state's witness, Leona Darden, were the only eyewitnesses to the killing."

Affirmed.