619 So.2d 212 (1993)
Roy Ross GERRARD
v.
STATE of Mississippi.
No. 90-KA-1159.
Supreme Court of Mississippi.
May 27, 1993.
Rush M. Clements, Travis T. Vance, Jr., Vicksburg, for appellant.
Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
McRAE, Justice, for the Court:
This appeal arises from a judgment rendered on October 24, 1990, by the Circuit Court of Sharkey County, Mississippi, wherein Roy Ross Gerrard, a member of the Sharkey County Board of Supervisors, was convicted of embezzlement by a public official under Miss. Code Ann. § 97-11-25 (Supp. 1992). The indictment charged him with embezzlement from May, 1988 to "on or about" the first day of April, 1989. Gerrard was sentenced to a five-year term in custody of the Mississippi Department of Corrections, which was suspended based on ten conditions, and was fined five thousand dollars ($5,000.00) plus court costs. Gerrard appeals to this Court assigning numerous errors to the trial court. He asserts that he was wrongfully convicted under § 97-11-25, in that he was acting not by "virtue of office" as the statute requires, *213 but merely "by color of office," which under Pennock v. State, 550 So.2d 410 (Miss. 1989), did not allow a conviction under this statute. We find the remaining allegations, which challenge evidentiary and procedural rulings, to be without merit.
We affirm and expressly overrule the holding in Pennock as it unduly narrowed the application of the embezzlement statute rendering it meaningless.

FACTS
At the time of trial, Roy Ross Gerrard had been a member of the Sharkey County Board of Supervisors since January, 1970. One of his responsibilities as supervisor was to oversee the payroll for county workers. All payments for the payroll were authorized by submission of warrants to the clerk by Gerrard or one of his Road Supervisors. During his tenure as a supervisor, pay warrants were issued to the following:
A. Rodney Seaton: $262.93 based on 64 hours of county labor. Varying amounts for April, May, June, July, August, and November of 1988.
B. Robert Ousley: $498.18. Various payments from July to October 1988.
C. Jeffrey Coleman: Various payments from February to December of 1988 and in January and February of 1989.
D. Lawyer Carter: Various payments for September to December of 1988 and the months of January and February of 1989.
Although Gerrard represented that these men had been employed by Sharkey County at the designated times, they either had never worked for the county or had only worked for the county on fewer occasions than Gerrard claimed. The State Attorney General's Office secured an indictment against Gerrard at the April 1990 Term, and the case proceeded to trial on August 20, 1990.
At trial, the Clerk of the Chancery and Circuit Courts of Sharkey County, Mississippi, Ike Collins, Sr., testified that as chancery clerk it was his responsibility to pay to the county employees their monthly wages. By law, the chancery clerk of each county is charged with the management of county payroll funds. In the course of discharging this duty, Collins followed a procedure which required members of the county board of supervisors or the county's road foremen to bring him a payroll, which listed the names of those to be paid from the county's funds. On the basis of the representations made by the maker of the payroll, the amount due each employee was calculated by one of Collins' clerks, and a pay warrant was then issued for the amount due. The payrolls in question were identified and introduced into evidence.
Rodney Seaton testified that he had never been employed by Sharkey County and that he had been employed by Bell Allen Farms in May of 1988. With the exception of one day in June of 1988, he had not worked for the county or for Gerrard. According to Seaton, Gerrard told him that his name had been placed on the Sharkey County payroll so that Gerrard could "give him a reference." Seaton stated that he signed a time sheet for the county on at least one occasion in March, 1988. Seaton said he did not contest Gerrard's request that he sign the time sheet because Gerrard had "never led [him] wrong before." However, Seaton stated that he did not receive the pay warrant issued on the basis of the March time sheet. He further stated that the endorsement on the warrant was purported to be that of his grandmother. Seaton acknowledged that he did endorse one of the other warrants issued in his name. As to the others, some of which bore an endorsement of "Roy's Inc.," he did not negotiate. Although all of the warrants do bear an endorsement purporting to be that of Seaton, he testified that the other time sheets, which apparently bore his signature, were not, in fact, signed by him.
The warrant issued to Seaton in December of 1988 did bear his endorsement, but he claimed that he had not seen it before. In explanation, he stated that on a visit to Gerrard's store in December, 1988, Gerrard approached him and asked him to sign a folded piece of paper. Seaton did not know *214 what the paper might have been, but he did know that he received approximately $400.00 after signing the paper. In actuality, the warrant was made out to Seaton for $714.18.
The State also obtained testimony from Robert Ousley, for whom payment had been issued as if he had worked for Gerrard from June, 1988 until the second week of September, 1988. Ousley testified that he actually had worked only one day in September. He then testified about the manner in which he was given certain funds by Gerrard on the basis of his signature on the back of checks. Jeffrey Coleman and Lawyer Carter likewise described Gerrard's dealings with them which were similar to the pattern of actions exhibited with the other witnesses.
After twenty minutes of deliberation, the jury returned a verdict of guilty on August 22, 1990. Upon Gerrard's request, sentencing was continued to September 21, 1990, pending a presentence report. The judge announced, at the request of the State, that at that point, Gerrard would not be removed from office pending sentencing. However, on August 27, 1990, the Court removed Gerrard from office effective August 23, 1990.

I.
Gerrard was indicted and convicted of violation of Miss. Code Ann. § 97-11-25 (Supp. 1992): "Embezzlement by officers, trustees and public employees converting property to own use". That statute provides as follows:
If any state officer or any county officer, or an officer in any district or subdivision of a county, or an officer of any city, town or village, or a notary public, or any other person holding any public office or employment, or any executor, administrator or guardian, or any trustee or an express trust, any master or commissioner or receiver, or any attorney at law or solicitor, or any bank or collecting agent, or other person engaged in like public employment, or any other person undertaking to act for others and intrusted by them with business of any kind, or with money, shall unlawfully convert to his own use any money or other valuable thing which comes to his hands or possession by virtue of his office or employment, or shall not, when lawfully required to turn over such money or deliver such thing, immediately do so according to his legal obligation he shall, on conviction, be committed to the department of corrections for not more than twenty years, or be fined not more than five thousand dollars ($5,000.00).
Miss. Code Ann. § 97-11-25 (Supp. 1992). (Emphasis added).
This Court elaborated on the scope of this statute in Pennock v. State, 550 So.2d 410 (Miss. 1989), which was decided after the incident in this case. Pennock, a secretary in the Division of Vocational Rehabilitation, convicted of embezzlement under Miss. Code Ann. § 97-11-25, had repeatedly forged the name of Dixon, her blind co-worker, to bogus vouchers illegally procured from the Office of the State Auditor. Then, checks payable to fictitious or ineligible vocational rehabilitation clients, were cashed, which netted Pennock more than $10,000.00 of public monies set aside to aid the handicapped. Pennock prepared a voucher, a form labelled "statement of account," either in the name of an individual not eligible for the services of the Vocational Rehabilitation Division or a fictitious person, then would submit these statements of account to the Office of the State Auditor for payment. The checks procured were made payable to the client named in the statement. Each statement of account had to be authorized by a counselor before submission to the Auditor. Since Dixon, an authorized counselor, was blind, he generally requested that Pennock sign his name to whatever papers were necessary. Taking advantage of this trust, Pennock affixed Dixon's signature to the bogus statements. No evidence was presented that Dixon authorized Pennock to sign his name to anything other than legitimate statements of account. Before it could be paid, the statement of account required the signature of the client. Pennock's accomplice, a woman named Vanlandingham, intercepted the checks and either Pennock or Vanlandingham *215 would "endorse" the check, cash it and the two would split the money.
The Pennock Court held that a faithful application of the statute to the facts commanded a reversal of the conviction; that, based on the particular facts presented, Pennock never had lawful possession or custody of the monies; and, because of this, she did not offend the statute. In reversing the conviction, the Court set out the difference between receiving funds "by virtue of office" as opposed to "under color of office." The Court quoted Barlow v. State, 233 So.2d 829 (Miss. 1970), for the proposition that:
There are two ways an official may receive money or property; one is by virtue officii and the other is colore officii. When the Legislature passed Mississippi Code 1942 Annotated Section 2120 (1956) [today's § 97-11-25], they decided that a man should not be convicted of embezzlement unless the money or the property was received by virtue of his office. By virtue of his office means that the officer has a legal right to do that which he is doing. If he did not have a right lawfully to receive that property and yet received it as a justice of the peace he was acting under color of office. The embezzlement statute does not provide that a man is guilty when he acts under colore officii. Barlow, 233 So.2d at 830-31.
Pennock, 550 So.2d at 413. In light of Barlow, the majority in Pennock found that:
It is certainly true that in general Pennock was authorized to sign Dixon's name and indeed to handle checks received from the Auditor's office payable to clients, and by reason of these facts, the prosecution struggles mightily for affirmance. The argument founders on the fact that Pennock's authority was limited to legal submission of statements of account, to legal receipt of client checks from the auditor. Pennock had no authority to sign bogus statements of account for clients who were either fictitious or ineligible persons. Therefore, she had no authority to sign the statements of account in issue. There is no evidence that Dixon conferred upon Pennock authority to sign these statements of account. More importantly, Pennock had no authority to receive these checks because they were procured by her own and Vanlandingham's unauthorized actions. The actions for which Pennock has been prosecuted were on this record quite clearly performed by her under color of office and not by virtue of office.
Pennock, 550 So.2d at 414. (Emphasis in original).
The thrust of the majority opinion was that in order to embezzle one must have come upon the funds without felonious intent. If one came upon funds with felonious intent then one was not embezzling, one was committing some other crime:
When a person  even an agent of the owner  takes possession of property with unlawful intent to feloniously convert the property to his own use at the time he acquires possession, he is guilty of larceny and not embezzlement.
Id. at 413-414 citing Mahfouz v. State, 303 So.2d 461, 463-464 (Miss. 1974). Under this definition, the only individuals who could ever be charged with wrongdoing under the embezzlement statute were those working in State government who had the legal right to be in possession of funds, such as treasurers and other state officials charged with management of funds. Pennock gutted the statute of all authority to draw such a distinction and so limited the interpretation of the embezzlement statute.
Gerrard asserts that he, like Pennock, did not procure the funds "by virtue of" his office but only "under color of" his office and that, as such, his conviction under § 97-11-25 cannot stand. In response, the State asks this Court to overrule Pennock to the extent that it limited the "by virtue of office" requirement of the statute to mean that the property converted by the employee or official must first have come into his hands properly and legally and in direct consequence of the duties attendant to his office. It asks this Court to adopt the position set forth in the Pennock dissent *216 to revive the original intent of the statute.
The dissenting opinion in Pennock found a clear case of embezzlement under the statute. The point made by the dissent was that the focus should be on how the power which was corrupted, to facilitate the procurement of funds, was acquired. "By virtue of office" applies to a power given to one who is a state official in a particular office. The embezzlement results when officials corrupt the power given to them "by virtue of their office." The dissent stated that the majority drew too narrow a distinction in reaching its conclusion that Pennock's authority to sign checks extended only to those accounts which Dixon had previously approved, and not to bogus accounts. In contrast, the dissent said that it was the authority to sign Dixon's name, in and of itself, with which Pennock was entrusted "by virtue of office" and that it was this power that she used wrongfully that caused the embezzlement "by virtue of office." Pennock, 550 So.2d at 415 (D. Lee, P.J., dissenting):
That authority gave Pennock the key to the State coffer, the means with which to unlock the doors to State funds. Pennock received this authority and was entrusted with this "valuable thing" ONLY "by virtue of her employment."
Pennock was authorized to sign Dixon's name, which caused the state checks to be sent to Vanlandingham and Pennock who then cashed the checks and split the proceeds. The majority conceded this point, but says that she had no right to sign Dixon's name to "bogus statements." That goes without saying, but it misses the mark; every embezzlement involves some wrongdoing. [citations omitted].
* * * * * *
... [I]t matters not that Pennock could have been found guilty of larceny or false pretense; her actions also constituted the crime of embezzlement.
* * * * * *
Today's opinion only serves to create a gap, rather than a "slip corner," through which lower-level State employees who misappropriate State funds may waltz, confident that, whatever their position and authority, they will escape prosecution because their actions were not done "by virtue of office or employment."
Id. at 415-416. (Emphasis added).
Today, we find the dissenting opinion in Pennock to be a more thoughtful interpretation of the purpose of the statute. If a state official uses a power given to him/her by law to obtain monies wrongfully, it is the corruption of power that causes those monies to be obtained "by virtue of office." The state official would never have had the means to misallocate funds had he/she not held an office which conferred that power upon him/her.
We hold that Pennock should be overruled inasmuch as the distinction drawn by the majority was an unnecessary one, and one which has made the embezzlement statute, for all practical purposes, a dead letter. Therefore, we expressly overrule Pennock.

II.
Gerrard further claims that the trial court erred by permitting the prosecutor to re-open his case-in-chief so as to formally put into evidence exhibits which he had already qualified for admission. Gerrard argues that this was error, particularly in view of the fact that the prosecutor did not do so until after a motion for judgment of acquittal was made by the defense. He offers no authority for his position, relying instead on the invocation of his general right to a fair trial. Gerrard did not enlighten this Court on how this alleged error prejudiced his case. For this reason, we refuse to entertain this question.
We have repeatedly held that when a litigant fails to cite authority for his claim of error, we will not address them. Wright v. State, 540 So.2d 1 (Miss. 1989) (claims with no citation to authority in support are not properly before the Court).

III.
Gerrard next asserts that the trial court erred in permitting the testimony of a *217 witness who had violated the invoked rule of sequestration. He claimed that the trial court's action ran afoul of our decision in Douglas v. State, 525 So.2d 1312 (Miss. 1988).
In Douglas, we held that, "[w]hen [a] violation of the sequestration rule is assigned as error on appeal, the failure of a judge to order a mistrial or to exclude testimony will not justify reversal on appeal ... absent a showing of prejudice sufficient to constitute abuse of discretion." Id. at 1318.
During the course of the trial, the witness Charles Coleman, who had apparently been subpoenaed by the State and who had been in the courtroom during the testimony of previous witnesses, was offered as a witness in the case-in-chief for the State. Gerrard objected, saying first that the witness had not been disclosed to the defense, and, second, that sequestration had been violated. The State announced that it would withdraw Coleman as a witness. Thereafter, Coleman sat in the courtroom for the remainder of the trial. After the defense had rested, the State announced that it would call Coleman as a rebuttal witness. This too brought an objection by the defense.
Gerrard claims that to allow Coleman to testify after the trial court had been apprised several times of the violation of the Rule "destroyed and voided the purpose and intent of the Rule on sequestration".
The defense based its argument on the fact that the judge did not conduct a formal hearing, believed to be required by Miss. R.Evid. 615 to ascertain the possible prejudicial effect of the witness' testimony on Gerrard. The defense cited as authority only a portion of the comment to Miss. R.Evid. 615:
This rule does not discuss sanctions for violation of the sequestration order. Under existing Mississippi law the court has the discretion to exclude the offending witness from testifying. See Johnson v. State, 346 So.2d 927 (Miss. 1977). The trial judge should not permit a witness who has violated the rule to testify unless he has first determined that the adversary would not be prejudiced by the violation of the rule.
A careful review of the Comments shows that the appellants neglected to cite the following:
Other remedies might be to strike the testimony of a witness who violated the rule, cite the witness for contempt, or allow a "full-bore" cross-examination. See Douglas v. State, 525 So.2d 1312 (Miss. 1988).
Official Comment to Miss.R.Evid. 615 (January 31, 1990). (Emphasis added).
The record reveals that the State offered Coleman as a rebuttal witness because Gerrard had testified during his case-in-chief that Coleman had also misallocated funds from the State. When the defense objected to Coleman's testimony as being in violation of the Rule, the parties went into chambers. When asked why he wanted Coleman to testify, the prosecutor responded that, from the information he had in his possession, he had no idea that Gerrard would try to implicate Coleman. The prosecutor felt that Coleman deserved an opportunity to respond to Gerrard's statements. The defense objected, stating that the prosecutor knew Gerrard would so testify because he had said it before. The trial judge then asked defense counsel to state specifically from where these statements appeared. Defense counsel did not answer. The trial judge then stated that he would allow the prosecution to ask only two questions, the content of which was established in chambers, and further stated that the defense would have wide open cross-examination. The defense at no time proffered how asking these two questions prejudiced their case. Since the trial court followed our rule and Comments thereto, there was no abuse of discretion.
The trial court allowed the prosecution to ask only two questions, of which the content was limited. The defense declined cross-examination. This matter was properly within the discretion of the trial judge, and he conducted the proceedings in accordance with the standards set forth by this Court, as enumerated in the Official Comment *218 to Miss.R.Evid. 615. See also Douglas v. State, 525 So.2d 1312 (Miss. 1988).

IV.
Gerrard asserts next that the trial court erred in removing him from office after the verdict was entered without allowing him notice and a hearing. Additionally, he seems to assert that because the case was tried in vacation, with the sentencing continued to a later day, that the trial court was without jurisdiction to enter any order in the case until the day set for sentencing.
After the verdict was announced, the prosecutor asked the trial court when a hearing would be held to determine whether Gerrard would remain in office. The trial court indicated that hearing would be held when he was sentenced, on September 21, 1990. Gerrard asserts that on August 27, 1990, without providing him notice, the trial court entered an order removing him from office pursuant to the authority of Miss. Code Ann. § 25-5-1 which states:
When any [public] officer is found guilty of a crime which is a felony under the laws of this state or which is punishable by imprisonment for one (1) year or more, other than manslaughter or any violation of the United States Internal Revenue Code, in a federal court or a court of competent jurisdiction of any other state, the Attorney General of the State of Mississippi shall promptly enter a motion for removal from office in the circuit court of Hinds County in the case of a state officer, and in the county of residence in the case of a district, county or municipal officer. The court, or the judge in vacation, shall, upon notice and a proper hearing, issue an order removing such person from office and the vacancy shall be filled as provided by law.

Miss. Code Ann. § 25-5-1 (1972). (Emphasis added). Gerrard does not argue that the trial court lacked power to do what was ultimately done, nor does he argue that he has any vested right to remain in office pending appeal. He only argues that it was a manifest abuse of discretion for the trial court to inform him that he would have a hearing at the time of sentencing and then not to follow through.
The statute does say explicitly that the court shall, upon notice and a proper hearing, issue that order. In this case, Gerrard was not given the opportunity for a hearing. The trial judge entered the order seemingly sua sponte. However, it did not make any difference in the outcome as he would have nevertheless been removed from office no matter what would have been said in the hearing. Because the statute mandates the removal of officers found guilty of felonies, we hold that failure to abide be the statutory requirements, in this instance, was harmless error.

V.
On October 24, 1990, Gerrard submitted a request to proceed in forma pauperis. This request was denied by the trial judge. The motion and financial reports were thoroughly reviewed and the trial judge ruled that he did not believe Gerrard to be indigent as defined under Miss. Code Ann. § 99-35-105 (Supp. 1992). Gerrard claimed that the denial of the request was an abuse of discretion because he was removed from office, his primary source of support was gone, and it was necessary for his church to take up a collection to help fund his legal aid. This was a matter properly within the discretion of the trial judge, who made a thoughtful review of the request. There was no abuse of discretion.

VI.
Gerrard asserts that there was an ex parte conference with a spectator at the trial, a man named Bill Klaus, and the prosecutor pertaining to jury tampering. The record reveals that during a ten-minute recess, the prosecutor brought Klaus to the judge's chambers and asked him to repeat a statement Klaus apparently had made to the prosecutor earlier. Klaus revealed that he saw Gerrard's wife speaking with one of the jurors. Afterward, the judge thanked Klaus for bringing this to his attention, dismissed him and asked someone to summon *219 defense counsel to chambers. The judge relayed the information to defense counsel. At that time the prosecutor and defense counsel indicated that they did not know what the conversation consisted of, but that it was probably harmless. The defense counsel further stated in his brief:
As no rights of the defendant were materially affected by the outcome of said hearing, this abuse of discretion and procedure is not completely developed herein [the brief] and is only shown here and in Proposition D to fully acquaint this Court with the highly charged nature of the trial and the extreme pressure by innuendo and directly [indirectly?] that was placed upon the Trial Judge.
"[This Court] has on many occasions held that [it] must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before [the Court] by a record, certified by law otherwise, [the Court] cannot know them." Mason v. State, 440 So.2d 318, 319 (Miss. 1983). This Court does not act upon innuendo and unsupported representations of fact by defense counsel. This issue is without merit.

VII.
Gerrard asserts numerous errors pertaining to the grant of several jury instructions for the State by the trial court. However, because Gerrard cites no authority for his positions, the matters are not properly before this Court. Wright v. State, 540 So.2d 1 (Miss. 1989).
For the reasons set out above, we expressly overrule Pennock and affirm Gerrard's conviction under Miss. Code Ann. § 99-7-25 for embezzlement by a public official.
CONVICTION OF EMBEZZLEMENT BY A PUBLIC OFFICIAL AND SUSPENDED SENTENCE OF FIVE (5) YEARS BASED UPON TEN CONDITIONS, $5,000 FINE AND COURT COSTS, AFFIRMED.
DAN M. LEE, P.J., and PITTMAN, ROBERTS and SMITH, JJ., concur.
BANKS, J., dissents with separate written opinion joined by HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, J.
BANKS, Justice, dissenting:
The majority strives mightily to fit this square peg into the round hole chosen by the prosecutor. Failing to do so, it enlarges the hole, a legislative, not a judicial, prerogative. Our legislature has clearly proscribed the conduct here involved. See, Miss. Code Ann. § 97-11-29 (1972). The prosecutor chose not to turn the one additional page in our code to use a statute that fit. This Court does violence to the law by ratifying that choice. I, therefore, dissent.
We must begin with the realization that it is not our task to construe Pennock v. State, 550 So.2d 410 (Miss. 1989), but rather to construe the statute, Miss. Code Ann. § 97-11-25 (1972). The statute has, from its inception, as long ago as 1880, proscribed a public official's conversion of money or property "which comes to his hands by virtue of his office." Id. See also, Miss.Codes: 1880, § 2787; 1892, § 1063; 1906, § 1141; Hemingway's 1917, § 869; 1930, § 894; 1942 § 2120. Early on this Court recognized that this statute is in derogation of common law, and, as such, must be strictly construed in favor of the accused. McInnis v. State, 97 Miss. 280, 52 So. 634 (1910).
It has never been seriously questioned that the property, which is the subject of embezzlement under this statute, must have come into the possession of the accused lawfully. See, e.g., State v. Yeates, 140 Miss. 224, 105 So. 498 (1925). Thus, it was a unanimous Court in Barlow v. State, 233 So.2d 829 (Miss. 1970), which affirmed the difference between "virtue of office" and "color of office" with respect to this statute. Id. at 830-831. That Court observed that the former involved the conversion of property lawfully received, while the latter involved property which the office holder has no right to receive. Id. For the latter, the officer is not amenable *220 to prosecution under the statute. Id. at 831.
Applying this unquestioned jurisprudence to the facts of this case, it is readily observable that the county treasury is not in the possession of the board of supervisors or its members, but instead is entrusted to the Chancery Clerk. Miss Code Ann. 19-17-1 et seq. (1972) What Gerrard did was obtain funds unlawfully through the fraudulent submission of payroll documents. This conduct is proscribed by at least two and, probably more, sections of our code. See, Miss. Code Ann. §§ 97-11-29 and 97-11-31. In fact, the only analogous situation found in the annotations to our statutory scheme was a prosecution pursuant to the predecessor to Miss. Code Ann. § 97-11-29 in Heard v. State, 177 Miss. 661, 171 So. 775 (1937). There, quite similarly to the situation here, a supervisor submitted false claims for payment on his "Gravel Pay Roll". Id. at 670. Although the false claim was for goods rather than services the principle is the same. The supervisor's conviction was affirmed. Id.
It should be readily apparent then that the majority's alarm over the decision in Pennock is unjustified. Its suggestion that a treasurer skimming would not be deemed embezzlement is obviously in error because the treasurer would lawfully have control over funds and thus amenable to prosecution under the statute here at issue. Moreover, we have, not one, but four separate embezzlement statutes dealing with public officials, designed to fit a variety of circumstances. Miss. Code Ann. §§ 97-11-25, -27, -29, and -31 (1972).
Finally, the argument that there has been but one successful prosecution in the last five years as a result of Pennock, is clearly fallacious, as well as factually erroneous. Pennock is not five years old. Additionally, this writer knows of no compilation of successful prosecutions which resulted in a guilty plea or conviction, but which were never appealed or otherwise reported. Finally, if we are limited to the reported decisions in the annotations to the statute, there have been at most ten successful prosecutions under the statute in its 123-year history. Annotations, Miss. Code Ann. § 97-11-25 (1972). A more exhaustive computer search may reveal a handful of additional cases, but it should suffice to say that convictions under this statute have never occurred frequently. Surely, the absence of an annotated conviction in the three years since Pennock means nothing at all. As to the factual error, we affirmed a conviction under this statute just last year. Medley v. State, 600 So.2d 957 (Miss. 1992).
Pennock did not announce new law. It applied old law to the facts of that case. I believe that it did so correctly. Regardless, the facts of this case do not warrant conviction under the statute chosen by the prosecutor and, therefore, the convictions should be reversed.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, J., join this dissent.