KING, C.J.,
for the Court:
¶ 1. Trent Dora was convicted in the Circuit Court of Noxubee County of simple robbery and sentenced as a habitual offender to fifteen years in the custody of *228 the Mississippi Department of Corrections (MDOC) and ordered to pay a $10,000 fine. Aggrieved, Dora appeals his conviction, raising five issues:
I. Whether the evidence was legally sufficient to support his conviction;
II. Whether the verdict is against the overwhelming weight of the evidence;
III. Whether the prosecution misled the jury by not revealing Byron Winters’s plea deal;
IV. Whether Dora received ineffective assistance of counsel when his trial counsel did not request a lesser-included-offense instruction for simple assault; and
V. Whether cumulative error requires reversal.
Finding no error, we affirm Dora’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 2. On March 20, 2008, Dora was indicted for armed robbery. The indictment alleged that on October 23, 2007, Dora participated in the armed robbery of Katina Black at Tern’s Food Market, which is located in Brooksville, Mississippi. Several witnesses testified to the events of that day; the testimonies of the key witnesses are summarized below.
I.Katina Black
¶ 3. Black, an assistant manager at Tern’s, was headed to the bank to drop off a deposit. When she walked outside, a man, who was driving a white Toyota Avalon, began walking toward her fast. Black testified that the man pulled his jacket up, and she saw the handle of a gun. After seeing the gun, Black began to run backwards, and she threw the money bag on the ground. The man grabbed the money bag and drove away, heading north. Black testified that she saw a black Pontiac Grand Prix, which was parked across the street at a medical clinic, follow the Toyota Avalon. Black then called 911 to report the crime.
¶ 4. On direct-examination, Black was asked whether she knew Dora, and she responded that she knew Dora from high school, but she had not had any other personal contact with him. Black testified that she saw Dora a few days before the robbery — once in Tern’s parking lot when she returned from the bank and once leaving Tern’s as she returned from lunch. On cross-examination, Black testified that Dora did drive a black Grand Prix. But she stated that she did not see Dora on the day of the robbery, and she never implicated Dora in the crime.
II. Phyllis Hudson
¶ 5. Phyllis Hudson, a 911 operator, testified that she received Black’s call reporting the robbery. Thereafter, she notified law enforcement and dispatched local city officers. Ten minutes later, Hudson received a call from a man stating that he had witnessed a female being robbed at Tern’s. The caller stated that the robber was driving a white or beige Toyota and was traveling south on Highway 45.
¶ 6. Hudson asked the caller for his name and phone number. The caller stated that his name was Tony and gave Hudson a phone number. However, Hudson noticed that the phone number that the caller gave her did not match the phone number on her caller ID. Hudson gave Tony’s name and both of the phone numbers to law enforcement.
III. Police Investigation
¶ 7. Dispatched officers headed south on Highway 45 in pursuit of the robber. However, the officers did not see the reported getaway car.
*229 ¶ 8. At that time, Sergeant Calvin McCrary of the Brooksville Police Department was near Tern’s, so he stopped there first. An employee told him to follow the white car, which had no license plate, and pointed in the car’s direction, which was headed north on Highway 45. As Sergeant McCrary attempted to follow the white car, a black car pulled out in front of him. Sergeant McCrary testified that the driver of the black car began driving slowly and weaving across the road, blocking his pursuit of the robber. Sergeant McCrary continued his pursuit, but he was unable to catch up with the robber. Sergeant McCrary testified that he recognized the black car and identified Dora as its driver.
¶ 9. The police officers figured out that “Tony” relayed the wrong information to the 911 operator. Chief Tina Williams, of the Brooksville Police Department, called the phone number that “Tony” had provided, and it was disconnected. Then, she called the phone number obtained from the 911 operator’s caller ID. The caller identified himself as Dora, and Chief Williams testified that she recognized his voice. Chief Williams asked Dora to come to the police department to give a statement, and he obliged.
¶ 10. Dora told Chief Williams that he had lied to the operator because he did not want to be involved with the case. He explained that he went to the clinic in Brooksville to visit Andrea Joiner Little, his girlfriend, and he did not want his wife to find out. Dora also stated that he knew the man who was driving the white Toyota and that his name was Byron Winters. Dora stated that he and Winters were both from Starkville, and they had once worked together.
¶ 11. The police found out that Winters no longer lived in Starkville but that he currently resided in Georgia. Winters was arrested in Georgia and brought back to Noxubee County.
IV. Byron Winters
¶ 12. At the time of Dora’s trial, Winters had been in jail for one year pending his trial on the same charge. Winters testified that he was in Starkville visiting a friend and his family. By chance, he saw Dora. They chatted, and Dora asked Winters to accompany him to Tern’s to pick up some money. According to Winters, Dora said that Black was involved in the robbery and explained the plan to him.
¶ 18. Dora removed the license plate off of Winters’s car, and Winters followed Dora to Tern’s. Winters parked at Tern’s, and Dora parked across the street at the medical clinic. When Black walked out of Tern’s, Dora activated his brake lights, alerting Winters that Black was approaching. Seeing his cue, Winters got out of his car, approached Black, and reached for the money bag. Winters testified that Black looked frightened, and he did not think that she knew what was happening. Black began to back away from him, and she threw the money bag on the ground. Winters then picked up the money and left.
¶ 14. Afterwards, Winters met Dora in Starkville at a predetermined location, and Dora split the money between them. Winters drove back to Georgia soon after. During the drive, Winters received a phone call from Dora, inquiring as to Winters’s whereabouts. Winters testified that he told Dora that he had made it to Alabama, and Dora hung up the phone.
¶ 15. On direct-examination, Winters was asked whether he had a gun under his jacket when he took the money from Black, and he responded no. Winters testified that his Blackberry cell phone was in a clip on his side.
*230 ¶ 16. On cross-examination, Winters was asked whether he had talked to his lawyer before agreeing to testify against Dora, and Winters responded no. Winters was also asked whether he expected to receive a plea deal in exchange for his testimony, and Winters said no. Winters stated that he volunteered to testify against Dora because what they did was wrong.
Y. Andrea Joiner Little
¶ 17. Little testified that she worked at the Brooksville Medical Clinic, which is across the street from Tern’s. That morning, she received a text message from Dora stating that he was coming to visit her. However, Little testified that she did not see Dora that day. Little maintained that she and Dora were not dating; she said they were old, high-school friends. Little testified that she would hear from Dora every few months, and the text message that she received from him was unexpected. Little maintained that Dora was trying to use her as an alibi.
VI. Trent Dora
¶ 18. When Dora was asked how he knew Winters, he testified that Winters was a former co-worker of his, and Winters was dating his niece. Dora testified that he saw Winters that morning at a gas station in Starkville. They chatted briefly, and Winters inquired as to Dora’s plans for the day. Dora told Winters that he was going to Brooksville to see a girl. Then, they went their separate ways.
¶ 19. Dora testified that he texted Little to let her know that he was on his way. He drove to Brooksville and parked at the medical clinic. As Dora got out of the car, he heard a woman scream. Dora turned around and saw Black being robbed. He got back into his car, left the clinic, and called 911 to report the incident.
¶ 20. Dora testified that he saw the robber make a right at the stop sign, which is why he told the 911 operator that the robber was traveling south. Dora stated that he drove in the opposite direction. He also testified that he gave the 911 operator a wrong name and phone number because he did not want his wife to know that he was in Brooksville visiting Little. Dora admitted that he was driving a black Grand Prix that day. However, he denied blocking Sergeant McCrary’s pursuit of the robber.
¶ 21. Dora testified regarding Chief Williams’s phone call and how he went back to the police department to give a statement. Dora testified that Chief Williams asked him if he knew anyone who drove a white Toyota Avalon, and he gave her Winters’s name. He also called Winters at the request of Chief Williams and inquired as to his current location and asked Winters whether he had a tag on his car. Dora denied taking part in the robbery, and he maintained that the other witnesses were lying.
¶ 22. On September 18, 2008, Dora was convicted of simple robbery. He was sentenced as a habitual offender to fifteen years in the custody of the MDOC and ordered to pay a $10,000 fine. Thereafter, Dora filed a motion for a judgment notwithstanding the verdict or, alternatively, a new trial. The trial court denied his motion. Aggrieved, Dora timely filed this appeal.
ANALYSIS
I. Legal Sufficiency
¶ 23. Dora challenges the legal sufficiency of the evidence. A motion for a directed verdict and a motion for a JNOV challenge the legal sufficiency of the evidence. See Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). When ruling upon *231 these motions, the trial court must view all of the credible evidence, which is consistent with the defendant’s guilt, in the light most favorable to the State. Id. at (¶ 17). This Court will not disturb the trial court’s ruling if “the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’ ” Id. at (¶ 16). However, “where the evidence fails to meet this test it is insufficient to support a conviction” and reversal is required. Id.
¶ 24. Dora was charged as an accomplice to armed robbery, but he was convicted of the lesser-included offense of simple robbery. Mississippi Code Annotated section 97-3-73 (Rev.2006) provides that:
Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery.
To support Dora’s conviction, the evidence must show that Dora acted as an accomplice in the robbery of Black.
¶ 25. Dora argues that the State failed to prove that he and Winters had made an agreement to rob Black, and the State failed to prove that Winters possessed the intent to rob Black. However, Winters testified that Dora was the mastermind of this scheme. The evidence shows that Winters initially believed that Black was in on the plan, but he soon realized that Black had no idea what was going on and that she was afraid. After realizing that Dora misled him, Winters still decided to stick with the plan, and he took the money. Black testified that she threw the money on the ground because she was in fear for her life. The evidence supports a finding that Winters took money from Black by putting her in fear of immediate injury and that Dora participated in the crime.
¶ 26. Dora argues that the charge for armed robbery cannot stand because Winters did not have a weapon. During the trial, Dora made a motion for a directed verdict on the basis that the State did not prove that Winters had a weapon. The trial court allowed the case to proceed on the lesser-included offense of simple robbery, which was an appropriate action. See Magee v. State, 542 So.2d 228, 234 (Miss.1989). And the jury convicted Dora of simple robbery, not armed robbery. Thus, we find that this argument is without merit.
¶ 27. Dora also maintains that the evidence is only sufficient to satisfy a charge of simple assault by physical menace. Because Dora failed to request this instruction at trial, this argument is procedurally barred from our review. See Williams v. State, 962 So.2d 129, 132 (¶ 13) (Miss.Ct.App.2007).
II. Weight of the Evidence
¶ 28. Next, Dora argues that the verdict is against the overwhelming weight of the evidence. A motion for a new trial challenges the weight of the evidence. Bush, 895 So.2d at 844 (¶ 18). This Court will not disturb the trial court’s denial of a motion for new trial unless “[the verdict] is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id.
¶ 29. Here, Dora repeats the same arguments that he made under his first assignment of error and maintains that there is no evidence that he participated in the robbery. Dora testified that- he was not involved in the robbery; he was simply a witness to the crime. To the contrary, there is testimony from Winters that Dora *232 participated in the robbery; there is evidence that Dora gave misleading information to the 911 operator about the robber’s location; and Sergeant McCrary testified that Dora had deliberately blocked his pursuit of Winters.
¶ 30. The testimony presented a strange set of circumstances for the jury to consider. The law is clear that it is within the jury’s province to determine the weight and credibility to give to the evidence and to resolve all conflicts in the evidence. See Smith v. State, 965 So.2d 767, 769 (¶ 8) (Miss.Ct.App.2007). Based on the verdict, the jury resolved any conflicts in the evidence in favor of Dora’s conviction, and we have no reason to disturb the judgment of conviction. This issue is without merit.
III.Winters’s Plea Deal
¶ 31. Dora argues that the State hid the fact that Winters was offered a plea deal in exchange for his testimony. Thus, Dora contends that his trial was fundamentally unfair. Dora states that, one day after he was convicted, Winters pleaded guilty to robbery and was sentenced to three years.
¶ 32. However, this statement is not supported by the record. Winters testified that he did not expect to receive a plea deal in exchange for his testimony. We “[do] not act upon innuendo and unsupported representation of fact by defense counsel.” Colenburg v. State, 735 So.2d 1099, 1102 (¶6) (Miss.Ct.App.1999) (quoting Gerrard v. State, 619 So.2d 212, 219 (Miss.1993)). This Court will not consider issues outside of the record on appeal; Dora’s claim is more appropriate for a motion for post-conviction relief. Brown v. State, 965 So.2d 1023, 1026-27 (¶¶ 11-12) (Miss.2007) (finding that evidence of a witness’s plea deal, which was not presented during trial, was not an appropriate matter for direct appeal but a matter for a motion for post-conviction relief). Thus, we dismiss this issue without prejudice so that Dora may raise his claim in a properly filed motion for post-conviction relief, if he so chooses.
IV. Ineffective Assistance of Counsel
¶ 33. Dora argues that his trial counsel was ineffective because his trial counsel failed to request a lesser-included-offense instruction for simple assault.
¶ 34. Issues of ineffective assistance of counsel are not normally considered on direct appeal. Archer v. State, 986 So.2d 951, 955 (¶ 15) (Miss.2008). However, we can consider the issues on direct appeal if: “(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Fannings v. State, 997 So.2d 953, 965 (¶ 37) (Miss.Ct.App.2008) (quoting Wilcher v. State, 863 So.2d 776, 825 (¶ 171) (Miss.2003)).
¶ 35. We find that the record before this Court on appeal is inadequate to show affirmatively ineffective assistance of counsel of constitutional dimensions. Accordingly, we dismiss Dora’s ineffective-assistance-of-counsel claim without prejudice so that he may raise his claim in a properly filed motion for post-conviction relief, if he so chooses.
V. Cumulative Error
¶ 36. Dora argues that cumulative error in this case requires reversal. However, where the Court finds no error in part, there can be no cumulative error that requires reversal. Harris v. State, 970 So.2d 151, 157 (¶ 24) (Miss.2007). Because we have not found any error in this case, *233 there can be no reversal based on the cumulative-error doctrine. This issue is without merit.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF NOXUBEE COUNTY OF CONVICTION OF ROBBERY AND SENTENCE AS A HABITUAL OFFENDER OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, AND TO PAY A $10,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., CONCURS IN RESULT ONLY. MYERS, P.J., NOT PARTICIPATING.