# IN THE COURT OF APPEALS 3/25/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-KA-00687 COA

JAMIE MOSLEY A/KA/ JAMIE LEE MOSLEY AND TYRONE MOORE A/K/A TYRONE TRAYON MOORE

APPELLANTS

v.

STATE OF MISSISSIPPI

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. JOSEPH LOPER, JR.

COURT FROM WHICH APPEALED: CIRCUIT COURT OF CHOCTAW COUNTY

ATTORNEYS FOR APPELLANTS:

BENNIE L. JONES, JR.

RICHARD BURDINE

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: SCOTT STUART

DISTRICT ATTORNEY: DOUG EVANS

NATURE OF THE CASE: ARSON

TRIAL COURT DISPOSITION: CONVICTED OF ARSON AND SENTENCED TO A TERM OF TWENTY (20) YEARS IN THE CUSTODY OF THE MDOC

CERTIORARI FILED: 7/11/97

MANDATE ISSUED:10/2/97

BEFORE THOMAS, P.J., PAYNE, AND SOUTHWICK, JJ.

THOMAS, P.J., FOR THE COURT:

Jamie Mosley and Tyrone Moore were convicted of arson of a public school building. Mosley and Moore have appealed, and both have assigned the following issues as error:

I. WHETHER THE TRIAL COURT ERRED IN DENYING A CHANGE OF VENUE;

II. WHETHER THE TRIAL COURT ERRED IN FAILING TO SUPPRESS MOSLEY'S CONFESSION; AND

III. WHETHER THE TRIAL COURT SHOULD HAVE GRANTED A MOTION FOR JNOV OR, ALTERNATIVELY, NEW TRIAL.

Mosley also raises the following issues:

IV. WHETHER THE CASE SHOULD HAVE BEEN REMANDED TO YOUTH COURT; AND

V. WHETHER THE TRIAL COURT SHOULD HAVE RECUSED HIMSELF.

Moore raises the following additional issues:

VI. WHETHER THE TRIAL COURT ERRED IN FAILING TO SEVER THE TRIAL; AND

VII. WHETHER THE TRIAL COURT ERRED IN EXCLUDING CERTAIN CHARACTER EVIDENCE.

Finding no error, we affirm.

FACTS

In early September of 1993, Ackerman High School Principal Raymond McLeod suspended Jamie Mosley from school. Mosley was very angry about his punishment, and on September 14, 1993, Mosley told several of his friends that he intended to burn McLeod's office. That evening Mosley went to the junior high football games where he told several friends that he was going to burn McLeod's office and showed them a bottle, some matches and lighter fluid.

Mosley convinced Tyrone Moore to drive him to the school. Mosley purchased twenty-five cents worth of gasoline and tied a red bandana he had been wearing that night to a glass bottle. While Principal Mosley attended the seventh, eighth and ninth grade football games and the school was empty, Mosley and Moore drove back to the school. At some point between 7:30 p.m. and 8:00

p.m., Mosley set the bottle on fire, and Moore threw it into the principal's office. The two returned to the football game. The resulting blaze destroyed a large portion of Ackerman High School.

Ketsia Kirkwood, who was friends with Mosley, testified that Mosley told her earlier that day that he was going to burn McLeod's office because he was mad at McLeod. Kirkwood also saw Mosley outside the gate at the ball game, and Mosley told her he had just burned the school. After the investigation into the fire began, and Kirkwood was questioned by the police, Moore and Mosley asked her if she "told on them for burning the school."

Antonio Scarbrough testified that Mosley told him at the game that he intended to burn down the school. Mosley showed him a bottle, lighter fluid, and matches. He also heard Mosley ask Moore to take him to the school. Scarbrough testified that Moore initially refused but agreed to take Mosley after he reminded Moore that McLeod had expelled him and refused to let him reenter school. Scarbrough testified that when the two returned to the game, Mosley said that they had burned the school. Moore also admitted that they had burned the school and asked Scarbrough not to tell anyone. Scarbrough noticed that Mosley was no longer wearing his red bandana.

Rodney Davis testified that during one of the football games, Mosley told him that he was going to burn the school. Mosley also showed him the bottle filled with gasoline.

Clarissa Harrington testified that she was friends with Moore. Moore drove her by the school that night while it was burning, and he told her that he and Mosley had started the fire.

Sheriff Mike Hutchinson testified at trial that he questioned Mosley and Moore about the fire. Hutchinson testified that Mosley admitted that he had burned the school and Moore had helped him. Hutchinson testified that Moore admitted that he had driven Jamie across town that night. Hutchinson also stated that there was a broken bottle and a red bandana found in the remains of McLeod's office. Hutchinson testified that he smelled gasoline on the bandana and in the office.

Johnny Patterson testified that he was working at a service station on the night of the fire. He remembered that Mosley had bought twenty-five cents worth of gasoline that night.


MOSLEY'S WITNESSES

Marsha Davis, Mosley's cousin, testified that Antonio Scarbrough told her that he and some of his friends burned the school; however, she admitted on cross-examination that she had never told this to the police or sheriff. Several of Mosley's sisters and one sister's husband testified that they saw Mosley between 7:00 p.m. and 7:45 p.m. that night. None had bothered to tell the police. Lonnie Dotson, who was a neighbor of one of Mosley's sisters, testified that he was with him around 7:00 P.M. Dotson admitted on cross-examination that he had previously told the police that he did not know anything about the incident.

MOORE'S WITNESSES

Moore's mother, aunt and uncle testified that Moore was driving his aunt around town between 7:30 and 8:00 P.M. Moore's aunt testified that she remembered a police car with its lights on passing them

as Moore drove her home.

Both juveniles were tried as adults. Neither Moore nor Mosley testified at trial.

ANALYSIS

I. CHANGE OF VENUE

Both defendants claim that the trial court erred in denying a change of venue. The trial court heard the motion and the testimony of a number of witnesses and concluded that the defendants could receive a fair trial in Choctaw County.

This court will reverse a denial of a motion for change of venue only upon a finding that the trial judge abused his discretion. *Reining v. State*, 606 So. 2d 1098, 1102 (Miss. 1992). The trial judge did not abuse his discretion in denying a change of venue.

At the hearing, all of the witnesses, including the witnesses for the defense, testified that they thought there were plenty of potential jurors in the county who were unbiased and who could be fair. Although the local newspaper had included articles about the fire and had even had a special section devoted entirely to the fire, it had not expressed an opinion about the guilt or innocence of the two defendants. In fact, as evidenced by the answers in voir dire, an impartial jury was selected. Any presumption of prejudice may be rebutted by the fact that an impartial jury was actually impaneled. *Morgan v. State,* 681 So. 2d 82, 92-93 (Miss. 1996); *Harris v. State*, 537 So. 2d 1325, 1329 (Miss. 1989). There is no merit to this issue.

II. SUPPRESSION OF MOSLEY'S CONFESSION

A. VOLUNTARINESS

Both Mosley and Moore assert that Mosley's confession should have been suppressed since it was not voluntary. Mosley, who was fifteen years old at the time of the offense and who has a low IQ, claims that he was incapable of making a knowing and intelligent waiver of his right against self-incrimination due to his low intelligence.

When Mosley was questioned by police, his father was present, and both he and his father were advised of his *Miranda* rights. Both stated that they understood these rights. Mosley stated that he was willing to discuss the matter, and he admitted that he had burned the school. After Mosley admitted that he and Moore had burned the school, his father stated that he wanted to get an attorney for his son. The officers stopped questioning Mosley, but before they left the room, Mosley blurted out, "Aren't you going to arrest Tyrone Moore?"

At the suppression hearing, three law officers testified that Mosley and his father stated that they understood their rights and appeared to comprehend these rights. The officers testified that they did not threaten or coerce Mosley into making a statement and that Mosley freely and voluntarily gave them the statement. A psychologist testified on Mosley's behalf that he did not believe that Mosley was intelligent enough to knowingly and intelligently waive his *Miranda* rights; however, the psychologist admitted that he did not review the Miranda form with Mosley. The trial court found the psychologist's testimony unconvincing and denied the motion to suppress.

The general rule is that for a confession to be admissible, it must have been voluntarily given. *Morgan*, 681 So. 2d at 86. In determining whether a confession is voluntary, the trial court must decide whether the accused understood prior to his confession (1) the content and substance of the *Miranda* warnings and (2) the nature of the charges against him. *Neal v. State*, 451 So. 2d 743, 755 (Miss. 1984). See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 694 (1966).

The prosecution bears the burden of showing that the confession was voluntary, and this burden may be met by the testimony of an officer or other person with knowledge of the facts that the confession was voluntarily made. *Morgan*, 681 So. 2d at 86-87. The accused's mental abilities are one factor to consider in determining whether a confession is voluntary. *Neal*, 451 So. 2d at 756. The trial court must look to the totality of the circumstances surrounding the confession to determine whether the confession was voluntary. *Chase v. State*, 645 So. 2d 829, 838 (Miss. 1994).

This Court will reverse the trial court's ruling that the confession was voluntary only upon a showing that the ruling was manifestly wrong or against the overwhelming weight of the evidence. *Id.* at 838. There was more than sufficient evidence that Mosley understood his *Miranda* warnings and the nature of the arson charge. The trial court's ruling was entirely proper.

B. RIGHT TO COUNSEL

Moore also objects to the trial court's failure to suppress Mosley's confession on the grounds that the last portion of the statement about whether the police were going to arrest Mosley was made after Mosley's request for an attorney.

Moore does not cite any authority in support of his assertion that Mosley's statement violated his right to counsel, and thus he is procedurally barred from raising this issue. *Gerrard v. State*, 619 So. 2d 212, 216 (Miss. 1993). Further, Mosley's unsolicited question to police after his father's request for an attorney was not made in response to interrogation, and therefor, it will not be suppressed.

Moore does not cite any authority in support of his assertion that he has standing to object to an alleged violation of Mosley's rights against self-incrimination and to assistance of counsel and is therefor procedurally barred from raising this issue. *Id.* Notwithstanding the procedural bar, there is no merit to this issue because the confession was voluntary, and the trial court properly admitted the statement. There is no merit to this issue.

C. RIGHT TO CONFRONT WITNESSES

Moore objects for the first time on appeal that the admission of Mosley's confession violated his right to confront witnesses against him. Since Mosley did not testify at trial and Moore was therefore denied his right to cross-examine Mosley about his confession and the portions of his statement which incriminated Moore, the portion of Mosley's confession dealing with Moore should not have come into evidence at the joint trial. *See Mitchell v. State*, 495 So. 2d 5, 9 (Miss. 1986); *Langston v. State*, 373 So. 2d 611, 613 (Miss. 1979). However, Moore failed to object to the use of the statement on these grounds at the suppression hearing, severance hearing, or even during trial. Moore also did not accept the State's offer to redact portions of the statement referring to him. Constitutional arguments not asserted at trial are waived. *Fleming v. State*, 604 So. 2d 280, 292 (Miss. 1992).

We would caution trial courts and prosecutors that the proper procedure would be for the State to refrain from offering a confession or to redact such portions on its own initiative or for the trial court to order such steps to be taken in a joint trial regardless of a defendant's failure to object. However, since Moore failed to object and there was more than ample evidence of his guilt, any error is harmless. *Magee v. State*, 542 So. 2d 228, 233 (Miss. 1989).

## III. MOTION FOR JNOV OR NEW TRIAL

Moore asserts that the verdict was the result of prejudice, bias or fraud and against the overwhelming weight of the evidence because the only evidence against him is Mosley's statement and the testimony of witnesses "whose truthfulness is doubtful because it was influenced by organized gang members." Mosley asserts that the verdict against him was not supported by the sufficient evidence because, other than his confession, the evidence was entirely circumstantial.

## A. MOTION FOR JNOV

A motion for JNOV challenges the sufficiency of the evidence supporting a guilty verdict. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993); *Butler v. State*, 544 So. 2d 816, 819 (Miss. 1989); *Wetz v. State*, 503 So. 2d 803, 807-08 (Miss. 1987). To test the sufficiency of the evidence of a crime, this Court must

> [w]ith respect to each element of the offense, consider all of the evidence - not just the evidence which supports the case for the prosecution - in the light most favorable to the verdict. The credible evidence which is consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty.

*Wetz*, 503 So. 2d at 808 (citations omitted).

Factual disputes are resolved by the jury, which is the sole judge of a witness' credibility and the weight to be given to conflicting testimony. *See Morgan*, 681 So. 2d at 93; *Burrell v. State*, 613 So. 2d 1186, 1192 (Miss. 1993). The jury had more than sufficient evidence to convict Mosley and Moore. The trial court properly denied the motion for JNOV. There is no merit to this issue.

## B. MOTION FOR NEW TRIAL

A motion for a new trial challenges the weight of the evidence rather than its sufficiency. *Butler*, 544 So. 2d at 819. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. *Morgan*, 681 So. 2d at 93; *Jones v. State*, 635 So. 2d 884, 887 (Miss. 1994); *McClain*, 625 So. 2d at 781. On review we accept as true all evidence favorable to the State, and the State is given the benefit of all reasonable

inferences that may reasonably be drawn from the evidence. *Morgan,* 681 So. 2d at 93; *Griffin v. State*, 607 So. 2d 1197, 1201 (Miss. 1992). This Court will reverse such a ruling only upon a finding that the trial court abused its discretion. *McClain*, 625 So. 2d at 781.

Clearly, the jury's verdict was not against the overwhelming weight of the evidence, and the trial court properly denied each defendant's motion for new trial. This issue is without merit.

## IV. REMAND TO YOUTH COURT

Mosley, who was fifteen years old at the time of the offense, argues that the case against him should have been remanded to youth court because the youth court's investigation was insufficient to support transfer of the case to circuit court, and the trial court erred when it denied his motion to quash the indictment.

Absent a showing of abuse of discretion, the decision of the youth court to transfer a case, made after an investigation, will not be disturbed on appeal. *In re Watkins*, 324 So. 2d 232, 234 (Miss. 1975). Mississippi Code Section 43-21-157 provides that the youth court may transfer jurisdiction for an alleged offense to the circuit court if the youth court finds that (1) there is probable cause to believe that the child committed the offense, and (2) there is clear and convincing evidence that there are no reasonable prospects of rehabilitation within the juvenile justice system. Miss. Code Ann. § 43-21-157 (1993). Section 43-21-157 provides a list of twelve factors for the youth court to consider in determining the prospects for rehabilitation.

Mosley asserts that there were only two witnesses at the youth court transfer hearing, and the evidence at the hearing was not sufficient to support the ruling since Mosley had not previously committed a violent crime, been in training school or put on probation. However, the youth court held the required hearing and addressed each statutory factor in his ruling that there were not reasonable prospects for rehabilitation. The trial court reviewed the youth court transcript and denied the motion to quash. Since this Court is unable to find that either the youth court or the trial court abused its discretion in arriving at this decision, we will not reverse these rulings. This issue is without merit.

## V. MOTION FOR RECUSAL

Mosley argues that the trial judge should have recused himself since he was a resident of Ackerman, attended Ackerman High School, and was mayor of Ackerman at the time of his appointment to the bench.

A judge is required to recuse himself if he has sufficient connections with the parties or preconceived opinions regarding the case so that he is unable to fulfill his role as judge. *Nicholson v. State,* 672 So. 2d 744, 755 (Miss. 1996). A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality. *Turner v. State,* 573 So. 2d 657, 678 (Miss. 1990). A judge is presumed qualified and unbiased, and this presumption will be overcome only by evidence showing beyond a reasonable doubt that the judge was biased or unqualified. *Id.*

There is not one iota of merit to this issue. If this court were to require recusal of all judges who

were the residents of a county where such an offense took place, or had attended high school or held prior elected positions in the circuit to which they were elected to the bench, it would be impossible to find judges qualified to try such cases. This issue is frivolous.

## VI. SEVERANCE

Prior to trial, Mosley filed a motion for severance asserting that the defendants "may have" conflicting defenses but that he was unsure since the investigation into the matter was ongoing. Mosley stated that "out of an abundance of caution, we have filed this motion . . . in order to cut down on the complexity of an already complex case and the confusion that might be engendered." At this point in the hearing, the State noted that the only potential problem was that the defendants had given different statements and a portion of Mosley's statement incriminated Moore. The State offered to redact portions of the statements dealing with the other defendant, if necessary. The trial court continued the motion until the defendants had an opportunity to complete their investigation.

Prior to questioning the sheriff about the statement Mosley made to him, the State again offered to redact any portions dealing with Moore, but Moore declined, saying it was not necessary. Moore later objected to the admission of this portion of Mosley's statement, but only on the grounds that the statement was inadmissible since Mosley had requested an attorney. The trial court refused to sustain the objection on that point.

Neither defendant raised the issue again until the State had completed its case-in-chief when Moore moved for a severance after his motion for a directed verdict was denied. In denying the motion, the trial court noted that Mosley's attorney stated at the docket setting that the defendants no longer desired a severance and that, after two days of testimony, it was simply too late to grant a severance. For the first time, Moore now asserts that he was entitled to severance because Mosley's statement incriminated him.

The Mississippi Supreme Court has addressed a situation in which a defendant actually requests severance as a result of a codefendant's statement, holding that

> In a joint trial where an accused moves for a severance because the prosecution intends to introduce a pre-trial admission, statement, or confession given by a codefendant which implicates the accused, the trial judge should require the state to elect between a joint trial in which the statement is admitted, but the portion implicating the accused is deleted, or agree to a severance.

*Walker v. State*, 430 So. 2d 418, 421 (Miss. 1983).

Moore failed to request a severance on the grounds that Mosley's statement implicated him, and Moore refused the State's offer to redact portions of the statement which implicated him. Moore simply objected to a joint trial by joining Mosley's motion for severance which was based on the case's "complexity." Until his motion at the close of the State's case-in-chief, Moore had never objected to a joint trial on the grounds that his codefendant's statement implicated him. An objection on a specific ground waives all other grounds for objection. *Fleming*, 604 So. 2d at 292. Moore

simply waited too late to request a severance.

The decision on whether to sever trials is left to the sound discretion of the trial court. *Johnson v. State*, 512 So. 2d 1246, 1254 (Miss. 1987). The trial court did not abuse its discretion in denying the motion for severance. There is no merit to this issue.

VII. EXCLUSION OF CHARACTER EVIDENCE

Moore asserts that the trial court erred when it refused to allow him to question witnesses about whether their testimony may have been influenced by any gang members. Moore specifically asserts that he was attempting to show bias or motive of certain witnesses and that he should have been permitted to question Antonio Scarbrough about whether he was a gang member, since " his truthfulness would be subjected to the gang's code of silence and loyalty." Moore also argues that he should have been allowed to question Ketsia Kirkwood about whether she had been threatened into giving certain testimony.

Rule of Evidence 608 (b) (2) allows specific instances of conduct, if probative of truthfulness or untruthfulness, to be used to attack the credibility of a witness concerning his character for truthfulness or untruthfulness. M.R.E. 608 (b) (2). However a determination of the use of such instances is left to the discretion of the trial court. *Id.*

Further, the relevancy and admissibility of evidence is left to the discretion of the trial court, and this Court will reverse only upon a showing of abuse of discretion. *Roberson v. State*, 595 So. 2d 1310, 1315 (Miss. 1992).

The trial court excluded the evidence involving Scarbrough's gang membership on the grounds that it was impermissible character evidence, but the court offered to reverse its ruling if the defendants could demonstrate how such membership was probative of untruthfulness. The defendants were unable to do so.

Kirkwood testified that no one had threatened her. On the basis of this testimony, the trial court properly refused to allow the defendants to then question her about whether Scarbrough was a gang member.

These rulings were within the discretion of the trial court, and since the trial court did not abuse its discretion, this Court will not reverse.

**THE JUDGMENT OF THE CIRCUIT COURT OF CHOCTAW COUNTY OF CONVICTION OF MOSLEY OF ARSON OF A STATE SUPPORTED SCHOOL BUILDING AND SENTENCE TO TWENTY YEARS, SAID SENTENCE TO BE SERVED CONSECUTIVELY TO ANY PREVIOUS SENTENCE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED**.

**THE JUDGMENT OF THE CIRCUIT COURT OF CHOCTAW COUNTY OF**

**CONVICTION OF MOORE OF ARSON OF A STATE SUPPORTED SCHOOL BUILDING AND SENTENCE TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID SENTENCE TO BE SERVED CONSECUTIVELY TO ANY PREVIOUS SENTENCE, IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO CHOCTAW COUNTY.**

**BRIDGES, C.J., McMILLIN, P.J., DIAZ, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**

**COLEMAN, J., NOT PARTICIPATING.**